UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JACOB HEALEY, et al.,                                                    Plaintiffs,

v.                                                    Civil Action No. 3:17-cv-71-DJH

JEFFERSON COUNTY KENTUCKY
LOUISVILLE METRO GOVERNMENT,
et al.,                                                    Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jacob Healey and Larry Louis Hibbs, Jr., bring this putative class action against Louisville-Jefferson County Metro Government and Director of Louisville Metro Department of Corrections Mark Bolton, alleging violations of state law and seeking relief under 42 U.S.C. § 1983 for alleged violations of their constitutional rights. (Docket No. 3) The action arises from Defendants' alleged practice of detaining individuals past their release dates and failing to comply with state-court orders concerning work release and home incarceration. Defendants move to dismiss the class allegations, arguing that Plaintiffs' proposed class fails to satisfy the requirements of Federal Rule of Civil Procedure 23. (D.N. 5) Defendants have also moved for an extension of time to file their answer to Plaintiffs' complaint, as well as to strike one of Plaintiffs' attached exhibits. (D.N. 6; D.N. 9) Meanwhile, Plaintiffs have filed several motions, including (i) a motion for a hearing on preliminary injunction and class certification; (ii) a motion for leave to file a second amended complaint; and (iii) a motion for a status conference. (D.N. 7; D.N. 8; D.N. 15) For the reasons set forth below, the Court will deny Defendants' motion to dismiss and motion for an extension of time to file their answer. The Court will deny without prejudice Defendants' motion to strike Plaintiffs' attached exhibit. Additionally, the

1

Court will grant Plaintiffs' motion for leave to file a second amended complaint and their request for a status conference but deny their motion for a hearing as premature.

## I. Background

The following facts are set out in the complaint and accepted as true for purposes of the present motions. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Plaintiffs' complaint depicts a troubling practice in which Defendants have systematically failed to comply with state court orders pertaining to individuals' release dates, work releases, and home incarcerations. (*See* D.N. 3) The complaint names as class representatives Jacob Healey and Larry Louis Hibbs, Jr.

In January 2017, the Jefferson County District Court ordered Jacob Healey incarcerated for 72 hours with work release. (*Id.*, PageID # 17) Despite this court order, Plaintiffs allege, Healey was not released until he had served approximately 85 hours, none of which included work release. (*Id.*) In July 2016, the Jefferson County District Court ordered Plaintiff Larry Louis Hibbs, Jr., incarcerated for 30 days with extended work release. (*Id.*) Plaintiffs allege that despite this court order, Defendants refused Hibbs work release for the first 10 days of his sentence. (*Id.*)

In support of their putative class action, Plaintiffs claim that Defendants' treatment of Healey and Hibbs is representative of an accepted, widespread practice on the part of Defendants, who "regularly and unlawfully falsely imprison, detain or incarcerate persons longer than ordered by [the] Courts of the Commonwealth of Kentucky." (*Id.*, PageID # 15) Plaintiffs thus seek to represent all persons "who have been unlawfully falsely imprisoned, detained or incarcerated longer than ordered by [the] Courts of the Commonwealth of Kentucky" within the

last year.  (*Id.*, PageID # 13)  They seek actual and punitive damages under § 1983, declaratory and injunctive relief, and damages under state law for negligence, gross negligence, and intentional infliction of emotional distress.  (*Id.*, PageID # 18–21)

Defendants have moved to dismiss the class allegations pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (D.N. 5)  Meanwhile, Plaintiffs have moved for a hearing on their motions for preliminary injunction and class certification, for leave to file a second amended complaint, and for a status conference.[2]  (D.N. 7; D.N. 8; D.N. 15)  Plaintiffs' proposed second amended complaint seeks to add three additional named class representatives.  (*See* D.N. 8-2, PageID # 69–70)  Defendants oppose Plaintiffs' motions for a hearing and for leave to file a second amended complaint.  In addition, Defendants have moved to strike a Jefferson County District Court order attached in support of Plaintiff's motion for a hearing.  (D.N. 9; *see also* D.N. 7-1)

## II.      Standard

Although Defendants "move to dismiss" Plaintiffs' class allegations, they are essentially asking the Court to strike the class allegations from the complaint.  A defendant may move to strike class allegations even before a plaintiff has filed a motion for class certification.  1 McLaughlin on Class Actions § 3:4 (10th ed. 2013); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that a motion to strike may come before a motion to certify and that "either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)" (alteration removed)).  Motions to strike are rare,

---

[1] Out of an abundance of caution, Defendants also move for an extension of time to file their answer to Plaintiffs' complaint.  (D.N. 6)  Because the Court will grant Plaintiffs leave to file an amended complaint, the Court will deny Defendants' motion as unnecessary.  Defendants shall have 14 days within which to file their answer to Plaintiffs' amended complaint.  *See* Fed. R. Civ. P. 15(a)(3).

[2] Plaintiffs filed their first amended complaint three days after filing this action.  (*See* D.N. 3)

"but are appropriate where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts." McLaughlin, *supra*, § 3:4.

Courts within this circuit have held that for purposes of a motion to strike class allegations, "[t]he moving party has the burden of demonstrating from the face of [Plaintiffs'] complaint that it will be impossible to certify the class as alleged, regardless of the facts [P]laintiffs may be able to prove."[3] *Schilling v. Kenton Cty., Ky.*, No. 10–143–DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) (citing *Jimenez v. Allstate Indem. Co.*, No. 07–cv–14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010)). In other words, "before a motion to strike class allegations is granted, the [C]ourt must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claims succeed in class action form." *Modern Holdings, LLC v. Corning Inc.*, No. 13–405–GFVT, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (alterations omitted)).

Thus, even when the class-action issue is before the Court in the context of a motion to strike, the central question is whether the Rule 23 prerequisites are met. *Schilling*, 2011 WL 293759 at *4 (citing *Thomas v. Moore USA, Inc.,* 194 F.R.D. 595, 597 (S.D. Ohio 1999)); *see also Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (citing *Smith v. Bayer Corp.* (*In re Baycol Prods. Litig.*), 593 F.3d 716, 721 n.2 (8th Cir. 2010)). If the Court determines that it would be impossible for Plaintiffs to satisfy the Rule 23 prerequisites, the class allegations must be stricken. *Schilling*, 2011 WL 293759 at *4.

---

[3] The parties agree that *Schilling* is the applicable standard. (*See* D.N. 5-1, PageID # 35; D.N. 11, PageID # 90)

### III.    Discussion

In support of their motion to dismiss Plaintiffs' class allegations, Defendants present three arguments: (i) Plaintiffs' class definition constitutes an impermissible "fail-safe class"; (ii) Plaintiffs' putative class fails to satisfy Rule 23(a)'s prerequisites; and (iii) Even if the proposed class satisfies the prerequisites, Plaintiffs cannot demonstrate a common scheme by the Defendants, as required for certification under Rule 23(b)(2), or that common questions of law or fact predominate over individual questions, as required for certification under subsection (b)(3). (D.N. 5-1, PageID # 34)  In light of Defendants' burden, however, the Court finds the arguments unpersuasive.   Defendants fail to show that it would be impossible to certify the Plaintiffs' proposed class as currently defined.  *See Schilling*, 2011 WL 293759 at *4.

### A. Nature of the Claims

Plaintiffs' primary claim is a request for relief under § 1983 for Defendants' alleged unconstitutional practice of detaining class members past their release date.  (D.N. 3, PageID # 18–19)  In *Shorts v. Bartholomew*, the Sixth Circuit recognized a constitutional claim for over-detention, explaining that "an incarcerated inmate has 'a liberty interest in being released at the end of imprisonment.'"  255 F. App'x 46, 51 (6th Cir. Oct. 17, 2007) (quoting *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 712–13 (8th Cir. 2004)).  Such a claim "is most often attributed to the Due Process Clause of the Fourteenth Amendment," *id.*, although "[t]he Eighth Amendment . . . may also be implicated when a prisoner has been detained past his maximum release date."  *Thome v. Bevin*, No. 3:17-CV-269-CRS, 2017 WL 3671314, at *3 (W.D. Ky. Aug. 25, 2017) (citing *Beil v. Lake Erie Corr. Records Dep't*, F. App'x 363, 368 (6th Cir. 2008)).

In *Shorts*, the Sixth Circuit adopted a three-prong test for Fourteenth Amendment claims of over-detention. To succeed on his claim, a plaintiff must eventually demonstrate (1) "that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted"; (2) "that the [defendant] either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight"; and (3) that "a causal connection between the [defendant's] response to the problem and the infliction of the unjustified detention" exists. *Shorts*, 255 F. App'x at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)). When *Shorts* is read alongside *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), it is clear that a plaintiff may state a claim of over-detention against a municipality by connecting his extended detention to a municipal policy or custom and showing that his particular injury was incurred as a consequence of that policy. *See North v. Macomb Cty.*, No. 10–11377, 2011 WL 4576848, at *4 (E.D. Mich. Sept. 30, 2011).

As Defendants note, however, not all of the proposed class members' claims pertain to over-detention. (D.N. 5-1, PageID #34) For example, proposed class representative Larry Louis Hibbs, Jr.'s, claims arise from Defendants' alleged refusal to allow him work release despite a state-court order that mandated such release. (D.N. 3, PageID # 17) And in Plaintiffs' proposed amended complaint, proposed class representative Cynthia Dawn Yates's claims arise from Defendants' alleged refusal to grant her home incarceration despite a state-court order that mandated such release.[4] (D.N. 8-2, PageID # 70)

---

[4] Accordingly, the Court's subsequent references to an "over-detention" class refers exclusively to those members who allege constitutional over-detention claims, notwithstanding the fact that under Plaintiffs' interpretation, their "over-detention" class encompasses all members' claims.

The Sixth Circuit has held that individuals do not have an inherent liberty interest in work-release programs. *Canterino v. Wilson*, 869 F.2d 948, 954 (6th Cir. 1989); *see also Etheridge v. Adams*, No. 5:05 CV P197 R, 2005 WL 3307093, at *3 (W.D. Ky. Dec. 1, 2005) ("The Sixth Circuit Court of Appeals has specifically held that the Fourteenth Amendment's Due Process Clause does not create a protected liberty interest in participating in prison employment, including work release." (citing *Codd v. Brown*, 949 F.2d 879 (6th Cir. 1991)). District courts in this circuit and elsewhere have reached the same conclusion even where work release was court-ordered. *See Carter v. McCaleb*, 29 F. Supp. 2d 423, 428 (W.D. Mich. 1998) ("[R]egardless of the source—a regulation, a statute, or a court order—a liberty interest is not implicated in a condition of sentence unless an 'atypical hardship' must be endured in its absence." (citing *Sandin v. Conner*, 515 U.S. 472 (1995))); *see also Goodwin v. Woods*, No. 2:15–CV–006–RWS, 2015 WL 2255053, at *7 (N.D. Ga. May 13, 2015) ("Plaintiff asks this Court to enforce the [state-court] order . . . that he serve his custodial sentence on work release . . . . [B]ut it also appears that Plaintiff does not have a federal constitutional right . . . to serve his sentence on work release."); *Laroque v. Beck*, No. 5:09–CT–3025–H, 2009 WL 6617608, at *1 (E.D.N.C. Mar. 3, 2009) ("The court ordered recommendation for work release is merely a recommendation and does not create a constitutional right to work release."); *Martin v. Blue Ridge Reg'l Jail*, No. 7:08-cv-00296, 2008 WL 1944232 (W.D. Va. May 2, 2008) (holding that a state official's failure to comply with court-ordered work release did not amount to a federal due process violation).[5]  Additionally, given the lack of a constitutional liberty interest in work-

---

[5] The Sixth Circuit has ruled similarly with respect to home confinement. *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439–40 (6th Cir. 2013) (holding that the plaintiff did not have a protected liberty interest in home confinement, at least where the individual can be characterized "as a prisoner serving a portion of his confinement in a different location from prison").

release programs, courts have asked whether an interest is established under state law. This Court has held that Kentucky has not created such a liberty interest. *Etheridge*, 2005 WL 3307093 at *3.

The fact that Plaintiffs seek to certify a class consisting both of individuals with colorable constitutional claims and individuals without such claims is problematic. As explained below, however, there are mechanisms to mitigate this concern such that the Court cannot conclude that it would be impossible to certify the proposed class.

## B. Fail-Safe Class

In support of their motion to dismiss Plaintiffs' class allegations, Defendants first argue that the proposed class constitutes an impermissible fail-safe class. (D.N. 5-1, PageID # 36–37) An implicit requirement for Rule 23 certification is that the "class must be presently ascertainable based on objective criteria that do not require the [C]ourt to delve into the merits of the claims." McLaughlin, *supra*, § 4:2; *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) ("[For] a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."). A fail-safe class is thus impermissible because such a class is "defined by the merits of the plaintiffs['] legal claims, and is therefore unascertainable prior to finding of liability in the plaintiffs' favor." *Schilling*, 2011 WL 293759 at *1 (alterations omitted); *see also Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class, and therefore, not bound by the judgment.").

Yet "a 'fail-safe' class is one that includes *only* those who are *entitled* to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). In other words, where a

proposed class includes both those entitled to relief and those not entitled, the class is not a fail-safe class. *See id.*; *see also Kissling v. Ohio Cas. Ins. Co.*, No. 5:10–22–JMH, 2010 WL 1978862, at *2 (E.D. Ky. May 14, 2010) (explaining that in a fail-safe class, "[i]f a putative class member is in fact a member of the class, then he necessarily prevails on his claim, as class membership is also determinative of liability"). Indeed, "[t]he possibility that some members of the class may fail to prevail on their individual claims will not defeat class membership on the basis of the ascertainability requirement." McLaughlin, *supra*, § 4:2.

Plaintiffs' class definition does not constitute an impermissible fail-safe class. Plaintiffs seek to represent "all individuals, who in the year preceding the filing of [their] complaint, were unlawfully falsely imprisoned or detained or kept incarcerated longer than ordered by [the] Courts of the Commonwealth of Kentucky." (D.N. 3, PageID # 14) As an initial matter, the Court recognizes that the definition's use of the world "unlawfully" is problematic. To determine whether a class member was *unlawfully* over-detained, the Court would need to determine the underlying merits of each member's claim. Still, the Court finds it unreasonable to strike the entire class allegation simply because of the inartful inclusion of a problematic word. Indeed, there is authority stating that the problem of a fail-safe class "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."[6] *Messner v. Northshore Univ. HealthSytem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also Eldridge v. Cabela's Inc.*, No. 3:16-cv-536-DJH, 2017 WL 4364205, at *11 (W.D. Ky. Sept. 29, 2017) (granting the plaintiff leave to file an amended class complaint to remove a phrase that would have prevented class certification).

---

[6] Moreover, the Sixth Circuit has held that the inclusion of the word "unlawfully" does not prevent class certification where the plaintiffs seek certification solely under Rule 23(b)(2). *Cole v. City of Memphis*, 839 F.3d 530, 534 (6th Cir. 2016).

When the word "unlawfully" is stricken, the class definition includes both those entitled to relief and those not entitled. Even if a member were detained longer than ordered, she may not be entitled to damages if her individual claim does not satisfy *Shorts*'s three-part test. This indicates that Plaintiffs' proposed class is not a fail-safe class. *See Hodgin v. Parker Waichman LLP*, No. 3:14-cv-733-DJH, 2015 WL 13022289, at *4 (W.D. Ky. Sept. 30, 2015) (finding that a proposed class did not constitute a fail-safe class where there were numerous ways a proposed member meeting the class definition would not be entitled to relief). Moreover, at this stage of the litigation, the Court cannot conclude that it is impossible to ascertain the members of the putative class. *Schilling*, 2011 WL 293759 at *4. *Modern Holdings* is particularly instructive. There, the plaintiffs sought to represent "all persons who between 1952 and 2013 have owned property or resided within a five-mile radius of [the manufacturing facility at issue]." 2015 WL 1481459 at *3. The defendants argued that the definition constituted an impermissible fail-safe class because the court, in determining whether each individual had standing to sue, would have to engage in a merits-based inquiry into whether the proposed member was damaged by the facility's tortious conduct. *Id*. In rejecting the defendants' argument, the court first noted that "[t]he inquiry into the factual question of harm or causation—however individualized it may be—is not dispositive on the issue of liability." *Id.* at *4. The court thus found that there was a possibility to certify the class if, for example, class discovery revealed that all residents within the five-mile radius had been harmed by the facility's conduct. *Id*. at *5.

Here, the inquiry into whether each proposed member satisfies *Shorts*'s three-part test, or whether each member has stated a valid work-release or home-incarceration claim—however individualized those inquiries may be—is not dispositive as to whether the member initially meets the class definition. This concern is more properly framed as an argument that the

proposed class lacks commonality. *See Salem v. Mich. Dep't of Corrections*, No: 13-14567, 2016 WL 7409953, at *5 (E.D. Mich. Dec. 22, 2016) ("Defendants' argument appears to be that the Court would have to make individual inquiries regarding the manner of the search to determine the constitutional validity of each strip search claim, however, this argument [is] an argument that the Plaintiffs' claims lack commonality, not that the definition constitutes an impermissible fail safe class or is unascertainable.").

Defendants' cited authority does not change this conclusion, as each case cited is distinguishable from the situation presented here. In *Schilling*, the plaintiffs sought to represent a class of all individuals who, while incarcerated by the defendants, were denied medical attention or subjected to physical and mental abuse by the defendants. 2011 WL 293759 at *1. Specifically, the plaintiffs defined the class as consisting of individuals who while incarcerated were "subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment and the Fourteenth Amendment and were denied appropriate and necessary medical care as a result of Defendants' neglect and deliberate indifference." *Id*. at *6 (internal alteration and quotations omitted). Based on this definition, the court held that the plaintiffs' proposed class constituted a fail-safe class:

> This proposed definition improperly requires the Court to make a legal determination that certain inmates at KCDC were deprived of constitutionally adequate medical care or subjected to physical and mental abuse in violation of their constitutional rights, which is impossible to do without reference to the type of deficient care each individual may have received or the type of abuse each individual may have endured.

*Id*.

Here, however, Plaintiffs do not define the class by reference to subjective criteria that echo the applicable substantive standard that this Court would eventually apply (e.g., "intentional abuse," "appropriate and necessary medical case," etc.). To determine membership in Plaintiffs'

class, the Court would likely simply reference objective criteria such as an internal database containing an individual's ordered release date and actual release date or prison logs indicating when an individual was released or not released for work. Indeed, in reaching its conclusion, the court in *Schilling* distinguished another case on the basis that there, the "plaintiffs identified a sufficiently specific and discrete event . . . that allowed the [c]ourt to determine class membership by reference to objective criteria." *Schilling*, 2011 WL 293759 at *7 (citing *Mack v. Suffolk Cty.*, 191 F.R.D. 16, 23 (D. Mass. 2000)).

Defendants' citation to *Turner v. Grant County Detention Center* is similarly unpersuasive. In *Turner*, the plaintiffs sought to represent a class of all individuals whom the defendants failed to protect from physical and emotional pain during incarceration by improperly classifying them for the jail.[7] No. 05–148–DLB, 2008 WL 821895, at *2 (E.D. Ky. Mar. 26, 2008). The court determined that class membership could not readily be determined, since determining whether the jail "improperly classified them" would entail a highly individualized inquiry. *Id*. at *8–9. As already stated, any individualized inquiry in this case would not occur on the front end (i.e., determining class membership) but rather on the back end (i.e., determining which class members have stated viable over-detention, work-release, and home-incarceration claims). Any problem with this inquiry is an issue of commonality or predominance, as discussed in detail below.[8]

In sum, Plaintiffs' proposed class does not constitute an impermissible fail-safe class.

---

[7] The plaintiffs also sought to represent a class of all persons whom the defendants failed to provide lawfully prescribed narcotics while the individuals were incarcerated by the defendants. 2008 WL 821895 at *2. The court denied certification of this class for reasons wholly inapplicable to the situation here. *See id.* at *9–10.

[8] Defendants' reliance on *Brashear v. Perry County, Kentucky* is also inapposite. The court's decision in *Brashear* occurred at the class-certification stage and after the court had conducted a hearing on the matter. No. 6:06–143–DCR, 2007 WL 1434876, at *1 (E.D. Ky. May 14, 2007).

**B. Rule 23(a) Analysis**

Even when a class-action issue is before a court in the context of a motion to strike, the central question is whether the Rule 23 prerequisites are met. *Schilling*, 2011 WL 293759 at *4. Defendants argue that Plaintiffs' proposed class fails to satisfy Rule 23(a)'s prerequisites. In support of this argument, Defendants primarily rely on the fact that Plaintiffs seek to bring constitutional claims alongside non-constitutional claims. (D.N. 5-1, PageID # 200–03) The fact that Plaintiffs propose a class consisting both of members with colorable constitutional claims (i.e., those members whom Defendants allegedly over-detained) and of those likely lacking a constitutional claim (i.e., those members whose claims arise from Defendants' failure to place them in work release or home confinement) is of notable consequence. However, given the applicable standard, the Court does not find that it would be impossible for Plaintiffs to eventually satisfy Rule 23(a)'s prerequisites.

*1. Numerosity*

Under Rule 23(a), a proposed class may proceed as a class action if

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As to Rule 23(a)'s first prerequisite, Defendants argue that once the non-constitutional work-release and home-incarceration claims are removed, there remain only a limited number of over-detention claims such that numerosity is not established. (D.N. 14, PageID # 200) But even if certification of a class consisting solely of over-detention claims were at issue, Plaintiffs have sufficiently alleged that such claims are so numerous that joinder is impracticable. "There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative." *Bacon v.*

*Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citing *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Rather, "[t]he facts of the case guide a court's determination that the class is sufficiently large to make joinder impractical." *Id.* (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). In their complaint, Plaintiffs allege that Defendants "regularly" detain individuals longer than ordered. (D.N. 3, PageID # 15) For purposes of the present motion, the Court finds such an allegation makes it possible that Plaintiffs will be able to eventually satisfy Rule 23's numerosity prerequisite. *Schilling*, 2011 WL 293759 at *4. Although this finding is generous to Plaintiffs, it is nonetheless warranted given that numerosity hinges on the particular facts of each case. The Court will be better positioned to rule on the numerosity question after a formal motion to certify—and its likely accompanying discovery— are filed. Manual for Complex Litigation (Fourth) § 21.14 (2004).

*2. Commonality*

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "A determination of commonality requires a precise understanding of the nature of the claims in the complaint: what conduct is alleged and how the allegations will be proved or disproved." McLaughlin, *supra*, § 4:7. The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of*

14

*Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). Still, "[c]ommonality generally will be satisfied upon a showing that the proposed class was subjected to the same alleged root conduct by the same parties, and that putative class members were harmed in the same way, even if potentially to different degrees." McLaughlin, *supra*, § 4:7.

Defendants argue that Plaintiffs' proposed class is incapable of satisfying the commonality requirement because it seeks to combine members who assert constitutional claims with individuals who only assert non-constitutional claims. (D.N. 14, PageID # 201) Defendants are correct that a class including both over-detention claims and work-release claims is problematic. *See Shorts*, 255 F. App'x at 55; *cf. Canterino*, 869 F.2d at 954. Given the applicable law set forth above, the Court cannot identify a common answer that would resolve an issue central to the validity of *each* of the members' claims. For example, even if the Court were to eventually find that the over-detention claimants satisfied the *Shorts* three-part test on a classwide basis, this fact does not illuminate whether Defendants are similarly liable to those members bringing work-release claims, since such claims are not constitutional claims.

Nevertheless, the Federal Rules grant this Court the discretion to divide a class into subclasses that are treated as separate classes under Rule 23. Fed. R. Civ. P. 23(c)(5). Given this authority, the Court cannot conclude that it would be impossible for Plaintiffs to eventually satisfy Rule 23's commonality prerequisite by splitting the over-detention, work-release, and home-incarceration claims among separate subclasses.[9] Indeed, under such a scenario, Plaintiffs

_____

[9] The Court recognizes that courts are split as to whether the "global class" must independently satisfy Rule 23's requirements in order for a court to divide the global class into subclasses. *See* Scott Dodson, *Subclassing*, 27 CARDOZO L. REV. 2351 (2006). In fact, the Sixth Circuit appears to side with those courts that require independent compliance with Rule 23. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 399 n.9 (1998) ("Subclasses are not a substitute for compliance with Rule 23."). Yet, in light of the Sixth Circuit precedent that suggests otherwise, *see* Dodson, *supra*, at 2365–67 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)),

would likely satisfy commonality as to each subclass. *Brown v. City of Detroit* is instructive. In *Brown*, the plaintiff sought to certify a class of individuals detained for forty-eight hours or more without a judicial finding of probable cause. No. 10–12162, 2012 WL 4470433, at *13 (E.D. Mich. Sept. 27, 2012). The court found that the class definition satisfied Rule 23(a)'s commonality prerequisite: "Here, the crucial question is whether [the defendant] had a 'clear and persistent pattern of violating federal rights.'" *Id.* at *14 (quoting *Powers v. Hamilton Cty. Public Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)). Similarly, the crucial question in this matter would be whether Defendants over-detained individuals in a clear and persistent manner. If the proposed class were split into separate subclasses, Plaintiffs could possibly show that members in each of the subclasses were subjected to the same alleged root conduct by the same parties and harmed in the same way. *See* McLaughlin, *supra*, § 4:7.

*3. Typicality*

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The typicality and commonality requirements overlap to a large extent. *See Dukes*, 564 U.S. at 349 n.5. "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). In other words, "[a] plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." 1 Newberg on Class Actions § 3.29.

---

and given the absence of argument on this issue by the parties, the Court cannot definitively conclude that *Sprague* prevents the use of subclasses here. This is especially so given that the Court's research reveals no district-court decisions from the Sixth Circuit citing *Sprague*'s ninth footnote.

Here, the proposed members' claims are encompassed by the named representatives' claims. Healey's claim is typical of members seeking to bring over-detention claims; Hibbs's claim is typical of those members seeking to bring a work-release claim, and Yates's claim is typical of the home-incarceration claimants.[10] (*See* D.N. 8-2) Yet typicality is "established where the claims of the class and the representative[s] arise from the same event or conduct and proceed on the same legal theory." McLaughlin, *supra*, § 4:16. Thus, as with commonality, the fact that Plaintiffs seek to bring constitutional claims alongside non-constitutional claims is problematic. Nevertheless, the Court cannot conclude that it would be impossible for Plaintiffs to satisfy the typicality requirement given the Court's discretion to create subclasses. *See Tackett v. M&G Polymers USA, LLC*, No. 2:07-cv-00126, 2009 WL 10679180, at *3 (S.D. Ohio Dec. 3, 2009) ("Any potential differences in typicality of claims between the Class Representatives and members of the Class will be accounted for and managed by the certification of Subclasses."); *see also Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012) ("[A]s long as each subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and each subclass otherwise satisfies the requirements for certifying a class, so that each [subclass] could be the plaintiff class in a separate class action, there is no objection to combining [subclasses] in a single class action.").

*4. Adequacy*

The adequacy-of-representation prerequisite also tends to merge with typicality and commonality, as it "raises concerns about the competency of class counsel and conflicts of

---

[10] Although Healey technically seeks to bring both an over-detention claim and work-release claim, the Court cannot conclude that this alone satisfies typicality. Unlike the bulk of those unnamed plaintiffs wishing to assert a work-release claim, Healey has a colorable constitutional claim to fall back on if the Court ultimately concludes that the proposed class may not proceed as to its work-release claims.

interest." *Dukes*, 564 U.S. at 349 n.5. The Sixth Circuit has adopted a two-prong test for determining whether the adequacy-of-representation factor is met: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (alteration in original) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). Still, "[a] conflict must be actual and fundamental, *i.e.*, go to the heart of the class members' interests in the claims, to preclude a finding of adequate representation." McLaughlin*, supra*, § 4:45.

Here, the proposed class representatives collectively have common interests with the unnamed members of the proposed class. Any potential conflict that may arise because some members have colorable constitutional claims while other members do not likely would not "go to the heart of the class members' interests in" those claims. *Id*. Moreover, the Court's discretion to create subclasses would alleviate any such conflict. With regard to the qualification of counsel, Defendants do not argue that Plaintiffs' counsel is unqualified. Thus, it is not impossible that Plaintiffs will eventually satisfy the adequacy prerequisite.

Based on the foregoing analysis, the Court determines that it is possible for the Plaintiffs to satisfy Rule 23's prerequisites. *See Schilling*, 2011 WL 293759 at *4.

## C. Rule 23(b) Analysis

Even if a proposed class satisfies Rule 23(a)'s prerequisites, the Court must find that subsection (b)(2) or (b)(3) is satisfied in order to certify the class. To be certified as a subsection (b)(2) class, Plaintiffs must show that the defendants "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). To be certified as a subsection (b)(3) class, Plaintiffs must show that the class's common issues predominate over the potential

individualized questions and that proceeding as a class action is superior to other available methods. Fed. R. Civ. P. 23(b)(3). To pursue non-incidental damages, Plaintiffs must certify their class under subsection (b)(3). *Dukes*, 564 U.S. at 363–67.

Plaintiffs have not formally moved for certification but state that they bring this class action under subsections (b)(1), (b)(2), and (b)(3). (D.N. 3, PageID # 14) Defendants present viable arguments that Plaintiffs will fail to satisfy the predominance requirement under subsection (b)(3).[11] (*See* D.N. 5-1, PageID # 38) Nonetheless, at this time, the Court need not answer whether Plaintiffs are able to proceed as a (b)(3) class. Plaintiffs have adequately alleged a common scheme on the part of Defendants, such that it is possible that the Plaintiffs will successfully certify their class (or subclasses) under subsection (b)(2). (*See* D.N. 3) Again, any difference between the scheme to over-detain and the scheme to ignore work-release orders can be alleviated through the Court's discretion to create subclasses. Moreover, contrary to Defendants' statement, Plaintiffs need not *establish* a common scheme at this stage of the proceedings. The Court need only find that it is possible for Plaintiffs to eventually succeed in meeting that burden. *See Schilling*, 2011 WL 293759 at *4.

Because from the face of Plaintiffs' complaint it does not appear that it would be impossible to certify the proposed class, the Court will deny Defendants' motion to dismiss the class allegations.[12] With that said, nothing in this order shall be construed as an indication that

---

[11] Specifically, Defendants contend that determining liability in this matter requires answering several individualized questions, including (i) whether the proposed member has been improperly released; (ii) whether the release involved a constitutional violation; (iii) whether the failure to grant a release was a result of Defendants' negligence or deliberate indifference; and (iv) whether the failure to grant a release was intentional. (D.N. 5-1, PageID # 38)

[12] Plaintiffs also cite several similar cases in which courts have certified over-detention classes. Besides the reasons already stated, such persuasive authority is an additional reason to conclude that class certification is possible here. *See Driver v. Marion Cty. Sheriff*, 859 F.3d 489 (7th Cir.

the Court will grant certification in the future.  Defendants have identified several reasons why Plaintiffs' claims may not be amenable to class-action treatment.

### D. Plaintiffs' Motion for Leave to File Second Amended Complaint

Plaintiffs move to file a second amended complaint, which seeks to add three additional named class representatives.  (*See* D.N. 8-2)  Pursuant to Federal Rule of Civil Procedure 15, a plaintiff may amend his pleading with leave of the court after an initial amendment, and such leave should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Sixth Circuit has explained that Rule 15 reflects a "liberal amendment policy."  *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).  "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings."  *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).  "Thus, so long as the opposing party suffers no prejudice or disadvantage, the court should grant amendments to the complaint."  *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *1–2 (W.D. Ky. Oct. 4, 2016) (citing *Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961)).

Here, of the three proposed representatives, only James Michael Jarvis, Jr. alleges unconstitutional over-detention.  (*Id.*, PageID # 69–70)  The other proposed representatives' claims arise from Defendants' failure to grant work release or home incarceration.  (*Id.*, PageID # 70)  Defendants thus raise their previous commonality argument in opposition to Plaintiffs' motion.  (D.N. 10, PageID # 82–83)  As discussed above, although such claims are likely not typical of or common to the claims that Healey seeks to bring on behalf of those members alleging over-detention, the Court's power to divide the proposed class into subclasses might

---

2017); *Otero v. Dart*, 306 F.R.D. 197 (N.D. Ill. 2014); *Jones v. Murphy*, 256 F.R.D. 519 (D. Md. 2009); *Barnes v. D.C.*, 242 F.R.D. 113 (D.D.C. 2007).

alleviate this problem. The Court declines to address this issue until it is more fully briefed. Additionally, because this issue will be addressed at the class-certification stage, Defendants will not suffer prejudice or disadvantage if the Court allows Plaintiffs to include their proposed class representatives at this time. Accordingly, the Court will grant Plaintiffs' motion for leave to file a second amended complaint.

**E. Plaintiffs' Motion for a Hearing on the Issues of Preliminary Injunction and Class Certification**

Plaintiffs have also moved for a hearing on their "requests" for preliminary injunction and class certification. Notably, however, Plaintiffs have not filed a motion for class certification or preliminary injunction—the latter of which is not even mentioned in Plaintiffs' complaint. (*See* D.N. 3) Accordingly, the Court will deny Plaintiffs' motion for a hearing as premature. *See Fed. R. Civ. P.* 65(a)(2) ("Before or after beginning the hearing *on a motion* for preliminary injunction . . . ." (emphasis added)); *see also* LR 7.1(f).

**F. Defendants' Motion to Strike Plaintiffs' Attachment**

In support of their motion for a hearing, Plaintiffs attach a recent order from Jefferson County District Court. (*See* D.N. 7-1) In the order, the state-court judge requests that the defendants in this matter show cause as to why she should not hold them in contempt of court for their repeated failure to comply with her orders concerning individuals' release dates, work releases, etc. (*See id.*) In their response to Plaintiffs' motion for a hearing, Defendants move to strike the state-court order, arguing that it is replete with errors and does not form a basis for injunctive relief or class certification. (D.N. 9, PageID # 76) In resolving the pending motions, the Court has not considered the attached state-court order. Moreover, in any potential hearing on the issue of class certification or injunctive relief, Defendants may raise many of the

arguments they raise in their current motion. The Court will therefore deny without prejudice Defendants' motion to strike Plaintiffs' attachment.

## IV.    Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Defendants' motion to dismiss the class allegations (D.N. 5) is **DENIED**.

(2)    Defendants' motion to strike Plaintiffs' attachment (D.N. 9) is **DENIED** without prejudice.

(3)    Defendants' motion for an extension of time to file their answer to Plaintiffs' complaint (D.N. 6) is **DENIED** as unnecessary.

(4)    Plaintiffs' motion for a hearing (D.N. 7) is **DENIED** without prejudice.

(5)    Plaintiffs' motion for leave to file a second amended complaint (D.N. 8) and motion for a status conference (D.N. 15) are **GRANTED**. Plaintiffs shall have **fourteen (14) days** from the date of entry of this Order within which to file an amended complaint. Defendants shall have **fourteen (14) days** thereafter in which to file their answer to Plaintiffs' second amended complaint.

(6)    Pursuant to 28 U.S.C. 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Dave Whalin for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Whalin is further authorized to conduct a settlement conference in this matter at any time.

March 28, 2018

David J. Hale, Judge
United States District Court