UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Filed Electronically*

| | | |
|---|---|---|
| **JACOB HEALEY,** | ) | |
| *et al.* | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-CV-00071-RGJ-RSE** |
| | ) | |
| **LOUISVILLE METRO GOVERNMENT,** | ) | |
| *et al.,* | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## THE PLAINTIFF CLASS'S MOTION FOR SANCTIONS

The parties have spent the last two years waiting on Defendants' expert to extract and supply the identities of Class Members as directed by the Court's September 27, 2022 Agreed Order for Data Collection and Analysis. The Order required this work to be carried out independently and transparently. In July, it became apparent that 1) the expert failed to perform the work described in the Court's Order, 2) Defendants have misrepresented to the Class and the Court the expert's abilities and activities, and 3) instead of extracting the relevant data as ordered, the expert has been working to manipulate the data to artificially reduce the size of the Class. The Class now asks the Court to sanction Defendants for their conduct and appoint a professional auditor to complete the necessary work of identifying the members of the certified class and the extent of their over-detention.

## Relevant History

On May 27, 2022, the Court appointed former Magistrate Judge Cleveland Gambill as Special Master to supervise the data extraction necessary to identify class members. DN 123.

Over the course of the summer, Judge Gambill worked with the parties to establish a plan for compiling the needed data. Defendants had already retained Dr. Charles D. Cowan of Analytic Focus to review Metro Corrections' documents (volumes of which had not been produced to Plaintiffs in response to written requests). Defendants represented to the Class and Judge Gambill that Cowan and Analytic Focus were competent and independent and urged the Class to agree to allow Cowan to collect the data. DN 124.

Following a lengthy meeting between the parties, Cowan, and Judge Gambill, the Class consented to use Analytic Focus to collect the data. The Class's consent was conditioned upon assurances that Analytic Focus's work would be independent and transparent. In his Second Report, the Special Master summarized the results of that meeting. DN 125. In an effort to expedite a resolution to the litigation, the Class agreed to allow Analytic Focus to first collect the Court-ordered data for the four pre-Covid months Plaintiffs had previously sampled, and which formed the basis of their argument that the class satisfied the numerosity and commonality requirements of Rule 23.  The Class also agreed that Analytic Focus would then sample two post-Covid months to capture the effects of decreased jail populations during the pandemic.  The results of these sample periods could then be used to estimate the potential class size and the volume of over-detained hours -- a prerequisite to any meaningful settlement discussion.

Judge Gambill reported that "Counsel and Dr. Cowan agreed to a transparent process by which Dr. Cowan would allow counsel and the undersigned reasonable input and access to his methods, analysis, and regular periodic, interim results, both oral and written." DN 125, Page ID# 2829-30. Judge Gambill presented the parties' agreement to the Court for review, and this Court entered the Agreed Order on September 27, 2022. (DN 126). The Order directed Analytic Focus to develop "a database of information that will be deemed reliable and be utilized by the

Parties and the Court in determining class membership and any remaining merits issues in the litigation." Specifically, Analytic Focus was to extract the name and last known contact information of each class member, the date and time each was entitled to be released, the date and time each was actually released, and the amount of time between the duty to release and actual release. Dr. Cowan was to provide monthly progress reports and be available to address questions and concerns. Analytic Focus agreed that its work "shall be open and transparent" and that it would disclose the information it collected to all parties and "upon request produce copies of such communications, records, and information to the requesting entity."

There were problems with Analytic Focus's compliance with the Order from the start. It did not communicate with the Special Master or Class counsel with the frequency required by the Agreed Order, requested documents were provided in inaccessible formats, and none of the monthly updates included substantive information about the data points it was supposed to be collecting. *See* Exhibit 1, 12/14/22 email.

Analytic Focus circulated a 20-page "interim report" in January 2023, which generated a variety of concerns about the process and timing of its work. DN 128, Page ID #2850. The parties, Cowan, and the Special Master discussed these issues in a video call on February 8, 2023. DN 129, Page ID #2854. Following that discussion, the parties agreed that Analytic Focus would provide a final report on the four initial sample months by March 3, 2023, and the final report for the additional two post-Covid months by May 17, 2023. DN 129, Page ID #2855.

On March 2, Defendants disclosed that Analytic Focus would not meet the March 3 deadline. *Id.* The Special Master then tendered an Agreed Order for Extension of Due Dates, which extended Analytic Focus's first deadline to March 17. The order reiterated that Dr. Cowan was to keep all parties informed and supply information as requested. DN 131. Analytic Focus's

March report, however, is replete with confusing charts, graphs, and equations, including an inexplicable statistical "error rate" that artificially reduced the size of the class and the volume of over-detained hours. (Exhibit 2).

> *Statistics are like bikinis. What they reveal is suggestive,*
> *but what they conceal is vital.*

--Aaron Levenstein

In a transcribed conference chaired by Judge Gambill in April of 2023,[1] the parties met with Dr. Cowan to discuss his work. Dr. Cowan acknowledged that he only had a precise time and date the duty to release arose for 32% of the files he reviewed for the four-month sample period. Exhibit 3, p. 10.  In the absence of other data, the Agreed Order instructed Analytic Focus to use the creation date of the release report as the date and time the Jail's duty to release arose.[2] Cowan did not do this. Instead, he classified those individuals as among the 68% with missing records and imputed a probability of over-detention based on his review of the "complete" records of the other 32%. *Id.* p. 54. Cowan acknowledged that his imputation was simply an average, and with respect to any individual class member was "meaningless." *Id.*, p. 111. The parties agreed that Data Analytics would prepare another report that – as it had already been instructed to do – used the time and date of the release report as the time the duty to release arose.[3] *Id.*, pp. 75, 88, 93-94, 124-125.

Dr. Cowan then disclosed that Analytic Focus had not received an email inbox containing the majority of emails communicating release orders, despite several attempts to get Defendants'

---

[1] Excerpts attached as Exhibit 3.
[2] All release reports are time stamped before processing. (Deposition of Arnetta Rochelle Al-Amin, pp. 53-54, 108, Excerpts attached as Exhibit 4).
[3] This provision already favors LMDC, since the receipt of a release order must occur before staff begin to process a release.

IT staff to provide them.[4] *Id.,* pp.100-102, 113-114. Cowan said it would only take Defendants a week to download the information and that he had provided written instructions for how to collect the data. *Id.*, pp. 115, 120. Dr. Cowan estimated it would take Analytic Focus approximately one month after receiving these emails to update its report with the relevant information from the four pre-COVID and two post-COVID sample sets. *Id.,* pp. 116, 119.

The parties also discussed the ultimate need to have a complete database of potential class members in order to have meaningful settlement discussions and ultimately to process claims. *Id.*, p. 102, 154. Judge Gambill expressed his frustration with the delays in the process. "It just seemed to me that when we sat here on August the 10th [2022] I envisioned a kind of collaboration, an open dialogue . . . so that you're not going to get caught short and discover that months later they didn't know or couldn't read, you didn't have the software to read your stuff. . . I just think that there was a better way to have done this." *Id.*, p. 109. Judge Gambill summarized the parties' plan going forward in his 6th Special Master Report. DN 132.

 Analytic Focus produced its updated report in August of 2023. Exhibit 5. The report itself was as unintelligible as the previous report, but the appendices included spreadsheets of each individual class member's release data. Based on that data, pre-COVID over-detention hours as defined by the Court's Class Certification Order averaged 2,000 per month. The post-COVID sample averaged 900 hours of over-detention per month. In accordance with the Court's Order, DN 135, the Class then tendered a settlement demand based upon these averages. In a process that had been thoroughly discussed and agreed to by the parties, Defendants then had 45 days to make an offer in response to the Class's settlement demand.  Defendants declined to make a counteroffer.

---

[4] LMDC's record department maintains four email inboxes, "a district court email box, a circuit court email box, pretrial email box, and an LMDC records email box." (Depo. Al-Amin, pp.19-20).

Seeing no other way forward, the Class moved the Court to lift the stay and return this case to active litigation. DN 142. The Class also requested production of the remaining data Analytic Focus had been directed to collect in the Agreed Order.  In their Response, Defendants represented that Analytic Focus was working to fulfill its obligations under the Agreed Order. DN 146 Page ID # 2900-01.

 Shortly after the Court granted the motion to return this case to active litigation, the Defendants again solicited the Class to agree to an extension of pretrial deadlines in order to focus on an agreed resolution of the case.  The Class agreed based upon Defendants' representation that Analytic Focus would collect and present the results of the raw data for the entire period of the class without any statistical manipulation. *See* November-December email chain attached as Exhibit 6.

The Class was led to believe that Analytic Focus was engaged in the data collection ordered by the Court and that Dr. Cowan would be made available for status updates. In a January 2024 Joint Status Report, the parties acknowledged The Class's request to meet with Dr. Cowan to discuss the progress of his work and told the Court "that conference call is being arranged." DN 154 Page ID #2987. In the February status report, the parties advised that they were still discussing a conference call with Dr. Cowan "concerning the process, timeline, technological needs, complexities, and issues that have arisen in completing the work assigned by the Agreed Order for Data Collection and Analysis (DN 126)" DN 162 Page ID #3008. The parties also requested another extension of pretrial deadlines in order to mediate the claims. An identical representation was made in a status report filed on April 30. DN 165 Page ID #3013.

Throughout 2024, The Class's repeated requests for a conference with Dr. Cowan about what he was doing and when he would have a completed list of class members were ignored or

rebuffed. *See, e.g.* email correspondence attached as Exhibit 7.  However, Plaintiffs refrained from raising the matter with the Court pending delivery of Analytic Focus's repeatedly promised results.

Analytic Focus's "updated data" was delivered on July 3, 2024, just four weeks before the parties' long-scheduled mediation. Exhibit 8. Rather than the specific information contemplated by the Court's Order, the spreadsheet was a purported monthly tabulation of median hours of over-detention based on yet another undisclosed statistical formula. To illustrate the consequence, Analytic Focus's pre-mediation updated report claims that only two individuals were over-detained in February 2016:

| Release Month | Sentence Release Count | Overdetention Count | Hours Overdetained | | | Hours Overdetained for Person "x" | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Median | Average | Total | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 2/2016 | 41 | 2 | 0.73 | 0.73 | 1.47 | 0.72 | 0.75 | | | | | |
| 3/2016 | 60 | 6 | 2.95 | 5.61 | 33.68 | 1.12 | 1.48 | 2.85 | 3.05 | 3.23 | 21.95 | |

The August 2023 appendices that contained the raw data for that period, however, identify several specific individuals who were over-detained in February 2016:

| | Inmate Number | BookingNumber | Release Type | Release Time | Duty to Release | OverdetentionStatus | ShortFileName | ReportDate | ElapsedTimeToRelease |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 590157 | 201603045 | Time Out | 2016-02-04 07:46:00 | 2016-02-04 00:33:00 | Overdetained | 022016-Cox, Barry W 01.pdf | 2016-02-04 00:33:00 | 7.216666667 |
| 3 | 605288 | 201603415 | Time Out | 2016-02-08 07:41:00 | 2016-02-08 01:10:00 | Overdetained | 022016-Hall, Jonathon L 02.pdf | 2016-02-08 01:10:00 | 6.516666667 |
| 4 | 445432 | 201603031 | Time Out | 2016-02-08 07:46:00 | 2016-02-08 01:21:00 | Overdetained | 022016-Potts, Dana Marie.pdf | 2016-02-08 01:21:00 | 6.416666667 |
| 5 | 607828 | 201603392 | Time Out | 2016-02-08 08:18:00 | 2016-02-08 01:08:00 | Overdetained | 022016-Floyd, Samuel D.pdf | 2016-02-08 01:08:00 | 7.166666667 |
| 6 | 566214 | 201603020 | Time Out | 2016-02-08 08:28:00 | 2016-02-08 01:19:00 | Overdetained | 022016-Mellick, Todd A.pdf | 2016-02-08 01:19:00 | 7.15 |
| 7 | 599725 | 201603563 | Time Out | 2016-02-08 08:59:00 | 2016-02-08 01:12:00 | Overdetained | 022016-Hayes, Patricia Lynn.pdf | 2016-02-08 01:12:00 | 7.783333333 |
| 8 | 566896 | 201603569 | Time Out | 2016-02-08 09:14:00 | 2016-02-08 01:05:00 | Overdetained | 022016-Cummings, Desmond.pdf | 2016-02-08 01:05:00 | 8.15 |
| 9 | 607824 | 201603568 | Time Out | 2016-02-08 09:15:00 | 2016-02-08 01:07:00 | Overdetained | 022016-Ferrieli, Kevin M.pdf | 2016-02-08 01:07:00 | 8.133333333 |
| 10 | 597075 | 201603411 | Time Out | 2016-02-09 08:24:00 | 2016-02-09 01:56:00 | Overdetained | 022016-Aarvig, Luke 01.pdf | 2016-02-09 01:56:00 | 6.466666667 |

The Class demanded a consultation with Cowan to explain these discrepancies, only to be informed that he'd left the country for a three-week vacation in Europe. Instead, Defendants produced an unsigned "Memo for the Record." Exhibit 9. Like every other communication from Analytic Focus, the memo uses a lot of words to avoid addressing the questions it was asked. The memo states that instead of using the data the Court instructed it to collect (release reports and emails), the new numbers were based on "a mathematical model (an algorithm) that used the

data found in XJail to decide whether the inmate was to be considered a potential member of [the class]".

Perhaps most disturbing given the stage of this litigation is the list of "legal issues" Analytic Focus claims prevents it from fully assessing the data:

Legal Issues Preventing Final Determinations (for Individuals)

- What is the standard for how frequently LMDC should update sentence calculations to account for dynamic components like work credits?
- Are Defendants or courts liable for late releases due to misunderstood, unclear, or missing court orders?
- When is LMDC expected to inquire about unclear court orders or about the status of external holds when delays in response could cause an inmate to be overdetained?
- What is the standard for timely transportation after a sentence is served?
- Judges may change a sentence. How much notice does LMDC need for an individual to be considered part of the Sentenced Subclass?
- Should individuals being released due to the accrual of bail credit be considered part of the Sentenced Subclass or the Pre-trial Detainee Subclass?

These are not questions Analytic Focus was tasked with answering. But it appears to have injected them into its work to introduce uncertainty and artificially reduce the size of the class weeks before mediation.  The memo concludes by acknowledging that Analytic Focus had been asked to provide names and addresses of potential class members, but has not yet done so, in part because the 2016 address information "is highly likely to be incorrect."

Predictably, when the parties' mediated on August 5, the day was spent debating the size of the class and the reliability of Cowan's data. The Class is now facing an October 15 discovery deadline and a dispositive motion deadline of December 15, 2024. The Class still has not had the opportunity to speak with Dr. Cowan. The Class no longer has any faith in Data Analytics' ability or willingness to produce independent and transparent data that the parties and the Court can rely on.

## Argument

Fed. R. Civ. P. 16(f) authorizes the Court to impose sanctions, including fees and costs, on a party that fails to obey a pretrial order. *Empire Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478 (E.D. Ky 1999) (collecting cases). Rule 37(B)(2)(A) authorizes sanctions against a party for failure to obey an order to provide or permit discovery. Rule 37(b)(2)(C) states that the court "must order the disobedient party, the attorney advising that party, or both, to pay reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." 28 U.S.C. §1927 also authorizes the imposition of sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. An attorney is sanctionable under §1927 "without a finding of bad faith, 'at least when an attorney knows or reasonably should know that a claim pursued is frivolous, of that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (*quoting Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)).

The Court also has inherent authority to issue sanctions where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (*quoting Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975) or has engaged in conduct "tantamount to bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).  "As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Shepherd v. American*

*Broadcasting Cos., Inc*., 62 F.3d 1469, 1472 (D.C.Cir.1995)) (*citing Chambers,* 501 U.S. 32, 47–50 (1991). Sanctions are particularly appropriate on a finding that a party was "delaying or disrupting litigation" or "hampering the enforcement of a court order." *BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 754 (6th Cir. 2010).

The Agreed Order entered by the Court is clear and unambiguous. Defendants' misrepresentations to the Court and the Class have complicated and delayed the resolution of this litigation. For two years, Defendants have misrepresented their expert's intent and ability to present the necessary data to the parties. While committing to transparency to the Class and the Court, Defendants sequestered their expert while it corrupted the raw data with statistical manipulations. After two years, the class members remain unidentified.

The Class asks the Court for the following relief: (a) an interim award of attorneys' fees and costs given the Court's certification of a class based upon undisputed overdetentions at the Jail that violated class members' fundamental liberty rights; (b) an award of attorneys' fees and costs incurred since the Sixth Circuit's denial of Defendants' petition for permission to appeal this Court's class certification decision for Defendants' misrepresentations and misconduct in delaying these proceedings; and (c) an order appointing a qualified auditor to collect the data subject to the Court's previous Order, with Defendants to bear the cost.

Respectfully submitted,


/s/ *Laura E. Landenwich*
GARRY R. ADAMS
LAURA E. LANDENWICH
ADAMS LANDENWICH LAY, PLLC
517 West Ormsby Avenue
Louisville, KY  40203
garry@justiceky.com
laura@justiceky.com
 (502) 561-0085
Fax:     (502) 415-7505

And

Gregory A. Belzley
P.O. Box 278
Prospect, KY  40059
Ph.:     (502) 292-2452
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on August 23, 2024, the above was electronically filed with the Clerk of the Court by using the CM/ECF filing system and copied to all registered CM/ECF participants in the above-styled action.

/s/ *Laura E. Landenwich*
LAURA E. LANDENWICH