# Time to Release for Inmates

# at the Louisville Metro Department of Corrections

## Report Covering Pre-COVID Sample

*Prepared for LMDC*



*Prepared by*
Analytic Focus LLC
March 17, 2023

# Contents

Executive Summary ........................................................................................................................... 3

Methods ........................................................................................................................................... 4

Time to Release ............................................................................................................................... 4

Pretrial Releases – Being Held or Released Until Trial ..................................................................... 5

    Released on Bond ........................................................................................................................ 5

    Release on Own Recognizance ................................................................................................... 5

    Release If Paid ............................................................................................................................. 6

Other Releases ................................................................................................................................. 6

    Released as a Result of a Court Order ......................................................................................... 6

    Released as a Result of a Time Out ............................................................................................. 7

    Released as a Result of a Modified Time Out Computation........................................................ 7

    Released from the Home Incarceration Program ........................................................................ 8

A Review of Plaintiffs Longest Periods for Claimed Late Release .................................................... 8

Remaining Questions ..................................................................................................................... 12

    Incomplete Data........................................................................................................................ 12

    The Adequacy of the Plaintiffs' Four Month Sample ................................................................ 12

Appendix 1:  Determining the Time to Release ............................................................................. 13

*Times to Release – Report on Pre-COVID Sample*

# Executive Summary

In the period 2016 through 2022, there were 209,483 releases from the Jefferson county jail. Out of the 84 months covered by this period, four were chosen by plaintiffs for review: February 2016, March 2016, June 2017, and July 20, 2017.  Within those four months, there are 10,738 records of inmates that are partial or complete.  A record consists of between 8 and 300+ pages. Depending on the type of incarceration, an inmate was supposed to be released in either 4 or 12 hours.  Inmates held longer than this benchmark value are counted in this report as overdetained.

Of the 10,523 complete records reviewed, 345 were for inmates who were overdetained.  For the entire seven year period, this results in an estimate of 6,865 overdetentions.

Of the 209,483 releases, 66,390 were estimated to be inmates who were not released but were held to be transferred to another facility, had escaped, or were being held by the state and could not be released without an order from the state, or participants in the home incarceration program (HIP).  Of the remaining releases, 8,620 were in categories with a maximum release time of four hours, and 134,472 were in categories with a maximum release time of twelve hours.  For all releases, times are measured in minutes or hours, and the distribution of times of release are presented in two histograms below.

Of the 8,620 four hour releases, 14.78% (1,274) were overdetentions.  Most of the overdetentions related to four hour releases were more than four hours overdetained, with a range of times observed that were detentions over eight hours..  Of the 134,472 twelve hour releases, 4.16% (5,591) were overdetentions.  For twelve hour releases, the range beyond 12 hours was not as broad.

The numbers on this page are for the entire seven year period, with an extrapolation to the full 209,483 releases that occurred during this period.  A two month sample of post-COVID shutdown releases is being examined, representing 47,839 releases in the post-COVID shutdown period.  At that time, a revision of this report can be made if the post-COVID rates of overdetentions changes from the rates from the four-month sample.

*Times to Release – Report on Pre-COVID Sample*

The remainder of this report describes methods used to obtain the estimates of overdetentions for the population of releases.

## Methods

Inmates held in the Louisville Metro Department of Corrections (LMDC) are released from detention in a variety of ways.  How an inmate is released impacts the process of release and release timing.  This study examines the various ways an inmate can be released, how LMDC knows to release an inmate, the time to release, and factors that relate to the timing of the release. Results presented cover the sample we selected, trying to replicate the sample selected of four months of materials selected by the plaintiffs:  inmate bookings for the months of February 2016, March 2016, June 2017, and July 20, 2017.

There are four ways for which we can estimate a duration of incarceration for an inmate at LMDC.  Many inmates are detained as part of the Home Incarceration Program (HIP), and some Bond from HIP, some are released when an Other Court Order is issued, and some Time Out on HIP.  These inmates are tabulated separately from the four categories where the inmate is incarcerated at LMDC.  As noted above, the HIP releases are separate from the incarcerations and are described more fully in a section below.

Finally, each section describes clean-up work remaining to be done, as well as the gray areas in terms of determination of a release time. This would include circumstances where key values are not recorded on a form, or where an entire form is missing or unavailable.  We conclude with a section describing how we extrapolated from known values to gray area values, to provide an estimate for the population of inmates during these four months, and potentially all months.

## Time to Release

The primary value we are attempting to ascertain for each individual is Time to Release.  We define time to release as:

Time Inmate Leaves LMDC - <u>Time Court Notifies LMDC</u> = Time to Release

*Times to Release – Report on Pre-COVID Sample*

From the chart below, for each type of release, we have multiple steps in the process which we also ascertain along the way to provide some information about how long each step takes and where bottlenecks may be occurring.  For the purpose of the litigation, our final analysis is only the time to release as defined above.

There are two computations of Time Out because of uncertainty as to what may have been intended regarding time to release.  The remaining sections cover each of these types of release.

# Pretrial Releases – Being Held or Released Until Trial

After being arrested, but before the trial, there is a period of time where the inmate may be released on bond, released after paying a fine, released on their own recognizance, or held until trial.  In the first three instances, an order goes from the court to LMDC and the inmate can be released.  The following sections cover the different ways this can occur.

## Released on Bond

The court sends a notice to LMDC that Bond has been paid for the inmate.

LMDC receives notification, and some time elapses until the notice is entered in the system.

From the time the bond information is entered into the system until the time the inmate is released is counted as processing time.

When the inmate leaves, that is the moment of release.

The full process from receipt to release is the time to release.  The chart below presents the timing involved for each step.

## Release on Own Recognizance

Individuals who have been arrested are then arraigned and the court can determine to release an individual on their own recognizance (ROR).  There is no payment of a bond or fees. There are more steps for an individual to be released, but the first three steps are in the jurisdiction of the courts and not part of the LMDC operations.

Time to release starts when the court sends a notice to LMDC that the inmate is released on his or her own recognizance.

*Times to Release – Report on Pre-COVID Sample*

LMDC receives notification, and some time elapses until the notice is entered in the system.

From the time release information is entered into the system until the time the inmate is released is counted as processing time.

When the inmate leaves, that is the moment of release.

## Release If Paid

There are times that individuals have not paid outstanding fees or other emoluments.  In this case, the individual has to resolve outstanding debt before being released.  This is known as release if paid (RIP). The steps for an inmate to be released are as follows:

The court sends a notice to LMDC that outstanding fees and debts are paid for the inmate.

LMDC receives notification, and some time elapses until the notice is entered in the system.

From the time the payment information is entered into the system until the time the inmate is released is counted as processing time.

When the inmate leaves, that is the moment of release.

Release If Paid is found in each of the four categories described in this report.  Results from Release if Paid reviews are tabulated in the category to which the incarceration would apply.

# Other Releases

There are many situations where an individual can be released due to a court order or a notice of discharge.  In any event, an individual must serve their sentence until there is a court order for early release or when his or her sentence has been fully served.  The following sections cover the different ways this can occur.

## Released as a Result of a Court Order

There are a few steps involved in an inmate release as a result of a court order.  The court signs an order and subsequently sends a notice to LMDC that the inmate is to be released.  The time between the court's signature and the receipt of the court's notice is not part of the computation of time to release.

LMDC receives notification, and some time elapses until the notice is entered in the system.

*Times to Release – Report on Pre-COVID Sample*

> From the time the order is entered into the system until the time the inmate is released is counted as processing time.

> When the inmate leaves, that is the moment of release.

## Released as a Result of a Time Out

If the inmate serves his or her full sentence, the end of the sentence is recognized as the day the sentence is completed.  In the system used by LMDC this is almost uniformly recorded as the day that the sentence ends, starting at midnight of that day (effectively 12:00:01 am):

There is no court order; the date of release was set when the court ordered the inmate to be held for a certain number of days.  The time arrives and the inmate is to be released.

> LMDC receives notification at the time of sentencing and enters the release time in their system, with the time of release defaulting to midnight.

> > From the time the system flags the release until the time the inmate is released is counted as processing time.

> > When the inmate leaves, that is the moment of release.

Based on the durations described above, many inmates are released before their full sentence is served if we consider midnight as the time LMDC should use as the notification that a prisoner's sentence is complete.  These results are not tabulated but are available in the back-up material.

## Released as a Result of a Modified Time Out Computation

If the inmate serves his or her full sentence, the end of the sentence is recognized as the day the sentence is completed.  In the system used by LMDC this is almost uniformly recorded as the day that the sentence ends, starting at midnight of that day (effectively 12:00:01 am).  However, with a release at midnight this can result in an inmate being released before a full sentence is served, if the sentence is set by the court in days and one counts full days from the time of booking.  Therefore, as this is an issue regarding how to interpret a judge's ruling, we offer an alternative calculation that starts and ends at the time of booking, rather than the time of booking until midnight for the release date.  These results are tabulated in this report.

*Times to Release – Report on Pre-COVID Sample*

Again, there is no court order; the date of release was set when the court ordered the inmate to be held for a certain number of days.  The time arrives and the inmate is to be released.

LMDC receives notification at the time of sentencing and enters the release time in their system, with the time of release computed as the booking time.

From the time the system flags the release until the time the inmate is released is counted as processing time.

When the inmate leaves, that is the moment of release.

## Released from the Home Incarceration Program

An inmate can be assigned to a home incarceration program (HIP) in a number of ways, as noted earlier in this report.  In this case, the inmate is given an ankle monitor to track where the inmate is at all times during their incarceration.  Once the term of incarceration ends, the monitor is turned off and the inmate is notified that he or she can return to LMDC to have the ankle monitor removed.

There is rarely a court order; the date of release was set when the court ordered the inmate to be held for a certain number of days.  The time arrives and the inmate is to be released.

LMDC receives notification at the time of sentencing and enters the release time in their system, with the time of release defaulting to midnight.

From the time the system flags the release until the time monitor is turned off is counted as processing time.  When the inmate monitor is turned off, that is the moment of release.

The full process for LMDC is computed from when the system flags the release until the release, which is when the monitor is turned off.

# A Review of Plaintiffs Longest Periods for Claimed Late Release

Plaintiffs presented a number of alleged examples of times that inmates were released late. Of the full number they presented, 27 were longer than 24 hours.  We reviewed each of these 27 to determine what the release times are following our paradigm.

The starting time for LMDC is either a notification sent to LMDC by e-mail from the court for the release or the duration of incarceration that is set at the sentencing hearing and sent to LMDC.

*Times to Release – Report on Pre-COVID Sample*

We obtained this information by requesting the transmittal e-mails sent by the courts and linking the transmittal e-mails to the paper release forms used by us and by plaintiffs to obtain information about the steps in the release.

We found that a few overdetention times claimed by the plaintiffs were correct.  However, most lengthy durations were due to a legitimate reason resulting in a non-release:

1) Inmate ended their sentence but was being held for transfer to another correctional facility, a mental institution, or another court for trial

2) Inmate escaped or was AWOL

3) Notification to LMDC was later than plaintiffs recorded, typically in an ROR where plaintiffs counted time in court before notification was sent to LMDC

4) Misreading of the multiple time stamps on the release records which are contradicted by information in XJail or in SCRAM (for HIP)

*Times to Release – Report on Pre-COVID Sample*

## Table 1a:  Plaintiffs' 27 Longest Times to Release

| | | Plaintiffs' Class Certification Summary | | | Results from Analytic Focus Review | | | |
|---|---|---|---|---|---|---|---|---|
| Inmate # | Inmate Name | Release DtTm | Release Order DtTime | Elapsed Release Hours | Release Time | Cause Time | Finding | Elapsed Hours | Over-detention |
| 473491 | BEELER, TRAVIS DEAN | 3/24/2016 11:07 | 2/29/2016 11:52 | 575.25 | | | *No inmate records* | *N/A* | *N/A* |
| 506373 | MINTON, JEREMY LEE | 2/29/2016 4:41 | 2/9/2016 1:08 | 483.55 | | | *No inmate records* | *N/A* | *N/A* |
| 578244 | BAKER, DYLAN G | 3/30/2016 11:47 | 3/11/2016 12:13 | 455.57 | | | **Not Eligible for Class (Other Agency Release)** | **N/A** | **N/A** |
| 468986 | JOHNSON, DONALD DWAIN | 2/13/2016 9:41 | 2/1/2016 6:00 | 291.68 | 2/13/2016 9:41 | 2/13/2016 6:54 | No Overdetention | 2.78 | 0.00 |
| 600685 | STARLIGHT, BJ | 2/25/2016 18:40 | 2/15/2016 11:18 | 247.37 | | | *No inmate records* | *N/A* | *N/A* |
| 613071 | DICKERSON, BOBBY G | 6/14/2017 17:27 | 6/5/2017 11:52 | 221.58 | | | **Not Eligible for Class (Other Hold)** | **N/A** | **N/A** |
| 618088 | DUVALL, KENNETH P | 7/3/2017 18:10 | 6/29/2017 10:51 | 103.32 | 7/3/2017 18:10 | 6/29/2017 10:55 | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 606727 | WOODARD, JULLIAN A | 7/4/2017 12:17 | 6/30/2017 10:39 | 97.63 | 7/4/2017 12:17 | Missing Bond Email | **Estimated from Bond Elapsed Hours Distribution (Unable to find email documenting when bond was posted)** | **13.10** | **1.10** |
| 553178 | WHIDBY, DWAYNE L | 7/18/2017 19:42 | 7/15/2017 12:30 | 79.2 | 7/18/2017 19:42 | RIP | **Estimated using Bond Elapsed Hours Distribution (Unable to find email documenting when RIP was satisfied)** | **13.10** | **1.10** |
| 590856 | CHEATHAM, CHAD W | 7/12/2017 21:48 | 7/10/2017 11:47 | 58.02 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 401228 | BORDEAN Jr, WILLIAM L | 6/2/2017 12:46 | 5/31/2017 10:40 | 50.1 | | | *No inmate records* | *N/A* | *N/A* |
| 534638 | BOLTON, ABRAHAM L | 2/25/2016 16:53 | 2/24/2016 1:32 | 39.35 | | | **Not Eligible for Class (Other Agency Release)** | **N/A** | **N/A** |
| 539385 | GOLDSMITH, JESSICA | 7/19/2017 21:44 | 7/18/2017 10:56 | 34.8 | 7/19/2017 21:44 | 7/19/2017 18:34 | No Overdetention | 3.17 | 0.00 |
| 333957 | HUGHES, SHAWNA | 2/19/2016 21:13 | 2/18/2016 12:00 | 33.22 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 617830 | ROGERS Jr, DARRYL | 6/2/2017 9:09 | 6/1/2017 3:06 | 30.05 | 6/2/2017 9:09 | 6/1/2017 3:10 | **Overdetained** | **29.98** | **17.98** |
| 566560 | HUSSEIN, MOHAMED | 2/26/2016 17:29 | 2/25/2016 11:34 | 29.92 | 2/26/2016 17:29 | Missing Court Order Email | **Estimated Using Other Court Order Email Transmission Duration Distribution (Unable to find email documenting when LMDC received order)** | **29.92** | **17.92** |
| 500751 | MEALOR, MICHAEL W | 3/10/2016 21:59 | 3/9/2016 17:20 | 28.65 | 3/10/2016 21:59 | 3/9/2016 14:51 | **Overdetained** | **31.13** | **19.13** |
| 594727 | DURLEY, ANITA C | 6/3/2017 14:13 | 6/2/2017 9:39 | 28.57 | 6/3/2017 14:13 | Missing Court Order Email | **Overdetained** | **28.62** | **16.62** |
| 537448 | POWELL, MURLESS | 7/29/2017 14:19 | 7/28/2017 11:07 | 27.2 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 560188 | VERNER, CORTEZ | 7/29/2017 14:15 | 7/28/2017 11:19 | 26.93 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 428025 | GALKIN, SCOTT B | 2/9/2016 17:54 | 2/8/2016 15:14 | 26.67 | 2/9/2016 17:54 | Missing Court Order Email | **Overdetained** | **26.67** | **14.67** |
| 600562 | MEAGHER, ANDREW S | 6/10/2017 18:28 | 6/9/2017 15:48 | 26.67 | | | *No inmate records* | *N/A* | *N/A* |
| 618369 | *BASTEANI, CHEYENNE N | 6/30/2017 8:24 | 6/29/2017 6:00 | 26.4 | 6/30/2017 8:24 | Missing Bond Email | **Estimated from Bond Elapsed Hours Distribution (Unable to find email documenting when bond was posted)** | **13.10** | **1.10** |
| 524620 | LIGGONS, CHERICKA | 7/15/2017 15:23 | 7/14/2017 13:21 | 26.03 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 617480 | HALL, TAMMY J | 6/6/2017 11:55 | 6/5/2017 10:26 | 25.48 | | | *No inmate records* | *N/A* | *N/A* |
| 479246 | MCNANIS, JOSHUA D | 7/20/2017 13:36 | 7/19/2017 12:30 | 25.1 | 7/20/2017 13:36 | 7/19/2017 14:13 | **Overdetained** | **23.38** | **11.38** |
| 548459 | SIMS, HEATHER R | 2/19/2016 11:40 | 2/18/2016 11:01 | 24.65 | | | *No inmate records* | *N/A* | *N/A* |

*Times to Release – Report on Pre-COVID Sample*

## Table 1b:  Plaintiffs' 27 Longest Times to Release, Reordered

| | | | | | | | Plaintiffs' Class Certification | | | Results from Analytic Focus Review | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Inmate # | Inmate Name | Release DtTm | Release Order DtTime | Elapsed Release Hours | Release Time | Cause Time | Finding | Elapsed Hours | Over-detention |
|---|---|---|---|---|---|---|---|---|---|
| 500751 | MEALOR, MICHAEL W | 3/10/2016 21:59 | 3/9/2016 17:20 | 28.65 | 3/10/2016 21:59 | 3/9/2016 14:51 | **Overdetained** | **31.13** | **19.13** |
| 617830 | ROGERS Jr, DARRYL | 6/2/2017 9:09 | 6/1/2017 3:06 | 30.05 | 6/2/2017 9:09 | 6/1/2017 3:10 | **Overdetained** | **29.98** | **17.98** |
| 566560 | HUSSEIN, MOHAMED | 2/26/2017 17:29 | 2/25/2016 11:34 | 29.92 | 2/26/2017 17:29 | Missing Court Order Email | **Estimated Using Other Court Order Email Transmission Duration Distribution (Unable to find email documenting when LMDC received order)** | **29.92** | **17.92** |
| 594727 | DURLEY, ANITA C | 6/3/2017 14:13 | 6/2/2017 9:39 | 28.57 | 6/3/2017 14:13 | Missing Court Order Email | **Overdetained** | **28.62** | **16.62** |
| 428025 | GALKIN, SCOTT B | 2/9/2017 17:54 | 2/8/2017 15:14 | 26.67 | 2/9/2017 17:54 | Missing Court Order Email | **Overdetained** | **26.67** | **14.67** |
| 479246 | MCNANIS, JOSHUA D | 7/20/2017 13:36 | 7/19/2017 12:30 | 25.1 | 7/20/2017 13:36 | 7/19/2017 14:13 | **Overdetained** | **23.38** | **11.38** |
| 606727 | WOODARD, JULLIAN A | 7/4/2017 12:17 | 6/30/2017 10:39 | 97.63 | 7/4/2017 12:17 | Missing Bond Email | **Estimated from Bond Elapsed Hours Distribution (Unable to find email documenting when bond was posted)** | **13.10** | **1.10** |
| 553178 | WHIDBY, DWAYNE L | 7/18/2017 19:42 | 7/15/2017 12:30 | 79.2 | 7/18/2017 19:42 | RIP | **Estimated using Bond Elapsed Hours Distribution (Unable to find email documenting when RIP was satisfied)** | **13.10** | **1.10** |
| 618369 | *BASTEANI, CHEYENNE N | 6/30/2017 8:24 | 6/29/2017 6:00 | 26.4 | 6/30/2017 8:24 | Missing Bond Email | **Estimated from Bond Elapsed Hours Distribution (Unable to find email documenting when bond was posted)** | **13.10** | **1.10** |
| 468986 | JOHNSON, DONALD DWAIN | 2/13/2016 9:41 | 2/1/2016 6:00 | 291.68 | 2/13/2016 9:41 | 2/13/2016 6:54 | No Overdetention | 2.78 | 0.00 |
| 539385 | GOLDSMITH, JESSICA | 7/19/2016 21:44 | 7/18/2017 10:56 | 34.8 | 7/19/2016 21:44 | 7/19/2016 18:34 | No Overdetention | 3.17 | 0.00 |
| 578244 | BAKER, DYLAN G | 3/30/2016 11:47 | 3/11/2016 12:13 | 455.57 | | | **Not Eligible for Class (Other Agency Release)** | **N/A** | **N/A** |
| 613071 | DICKERSON, BOBBY G | 6/14/2017 17:27 | 6/5/2017 11:52 | 221.58 | | | **Not Eligible for Class (Other Hold)** | **N/A** | **N/A** |
| 534638 | BOLTON, ABRAHAM L | 2/25/2016 16:53 | 2/24/2016 1:32 | 39.35 | | | **Not Eligible for Class (Other Agency Release)** | **N/A** | **N/A** |
| 618088 | DUVALL, KENNETH P | 7/3/2017 18:10 | 6/29/2017 10:51 | 103.32 | 7/3/2017 18:10 | 6/29/2017 10:55 | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 590856 | CHEATHAM, CHAD W | 7/12/2017 21:48 | 7/10/2017 11:47 | 58.02 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 333957 | HUGHES, SHAWNA | 2/19/2016 21:13 | 2/18/2016 12:00 | 33.22 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 537448 | POWELL, MURLESS | 7/29/2017 14:19 | 7/28/2017 11:07 | 27.2 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 560188 | VERNER, CORTEZ | 7/29/2017 14:15 | 7/28/2017 11:19 | 26.93 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 524620 | LIGGONS, CHERICKA | 7/15/2017 15:23 | 7/14/2017 13:21 | 26.03 | | | **Not Eligible for Class (HIP)** | **N/A** | **N/A** |
| 473491 | BEELER, TRAVIS DEAN | 3/24/2016 11:07 | 2/29/2016 11:52 | 575.25 | | | *No inmate records* | *N/A* | *N/A* |
| 506373 | MINTON, JEREMY LEE | 2/29/2016 4:41 | 2/9/2016 1:08 | 483.55 | | | *No inmate records* | *N/A* | *N/A* |
| 600685 | STARLIGHT, BJ | 2/25/2016 18:40 | 2/15/2016 11:18 | 247.37 | | | *No inmate records* | *N/A* | *N/A* |
| 401228 | BORDEAN Jr, WILLIAM L | 6/2/2017 12:46 | 5/31/2017 10:40 | 50.1 | | | *No inmate records* | *N/A* | *N/A* |
| 600562 | MEAGHER, ANDREW S | 6/10/2017 18:28 | 6/9/2017 15:48 | 26.67 | | | *No inmate records* | *N/A* | *N/A* |
| 617480 | HALL, TAMMY J | 6/6/2017 11:55 | 6/5/2017 10:26 | 25.48 | | | *No inmate records* | *N/A* | *N/A* |
| 548459 | SIMS, HEATHER R | 2/19/2016 11:40 | 2/18/2016 11:01 | 24.65 | | | *No inmate records* | *N/A* | *N/A* |

*Times to Release – Report on Pre-COVID Sample*

# Remaining Questions

Two questions remained to be addressed in our work for this report to the court.  One question was the completeness of the data and how to deal with missing records or missing data on records in our possession.  The second question was whether the four months selected by the plaintiffs provide sufficient information for the court to make decisions regarding whether times to release for inmates are excessive according to the standards set by the court.

## Incomplete Data

As Judge Gambill has noted, there are gray areas in the determination of time to release.  These typically result from missing data:  e-mails from the courts that are unavailable, blanks where times should be recorded on release records, and other issues where a solid start or ending time cannot be found.

However, we can proceed to complete the analysis we were asked to conduct by estimating missing values where they occur, using commonly accepted statistical techniques.  We know the steps comprising the release and have probability distributions for each of the steps.  Total time to release is the sum of the times for these separate steps.  If there are four steps in a release process and one step is missing, we can assign a random time to this step or estimate the likelihood that the missing value could lead to a determination of an overdetention.  Thus, we can state the likelihood that the actual time to release is greater than four or 12 hours.

This allows us to consider all inmates in the four-month sample selected by the plaintiffs and compute the total number of persons known to be over a preset, like four hours, and the total number of persons who are 50%, 60%, 70%, ... likely to be over that time.

## The Adequacy of the Plaintiffs' Four Month Sample

The other question to be addressed was whether the four months selected by the plaintiffs was sufficient for a determination of the likely number of persons over-detained.  The parties jointly agreed that, based on an analysis of numbers of releases, the four months in sample would only be used to estimate over-detentions for the period preceding the COVID pandemic.  A sample of two months was selected for review in the period of the COVID shutdown and after.

*Times to Release – Report on Pre-COVID Sample*

# Appendix 1:  Determining the Time to Release

The Time to Release computation is relatively easy if all the information necessary is available. This turns out to be a big "if".  There are many inmates at LMDC who are not released but instead are transferred elsewhere.  There are some inmates at LMDC who are not being held as a result of a decision in a Jeffersonville County court, but instead are being held as a guest of the state. There are inmates at LMDC who may have a release on one charge, but who are held for other charges and so continue to be held for those charges.  Some inmates have left LMDC of their own volition and are absent without leave.  Finally, some inmates are not actually "in", as they are at home in the Home Incarceration Program.  A summary of the distribution of these outcomes is presented below in Chart 1.

**Chart 1:  Outcomes for Inmates Regarding Release and Availability of Release Time Data**



***TTR = Time To Release***



*Times to Release – Report on Pre-COVID Sample*

Frequently, the information available to make a determination of time to release is complete and the calculation of time to release is straight-forward.  In general, we have the following flow of processing of an incarcerated person as:

## Signature at Court (t) ⇨ E-mail to LMDC ⇨ Release from LMDC

Turning this into some simple arithmetic, we have very specific time points that we find either on an e-mail, time-stamped onto a document, or found in XJail.

t: Time of Signature – this is one point in time

t+e: Time of E-mail and so Receipt by LMDC

t+e+r:  Time of Release (e.g., processing ends)

This means that "e" and "r" are elapsed amount for the e-mail to get to LMDC and the time to get to release accomplished.  This means that time to release can be calculated as:

## Time to Release = (t+e+r) – (t+e) = r

Since the time is computed from when LMDC receives the order to the time the inmate departs. This probably seems obvious to most readers of this report, but it is spelled out here because there are times that we don't know "e".  However, most of the time we will know "t" and "r".  We need to compute a statistical approximation to compute an estimated time to release.  To be able to compute a statistical approximation, we borrow from information we know and apply it to areas where we are missing information.

There are two ways to deal with a missing value of "e" when we don't know the time a release was received by LMDC.  One is determining the likelihood that "e" is greater than some value based on observed times for a specific type of release.  The other is to predict "e" based on the correlation of "r-e" with "r-t" when all three are known.

*Times to Release – Report on Pre-COVID Sample*

**Method 1a:  Conditional probabilities**

For all cases where we have all values of "r" and "e", we can compute x = "r"-"e" (or use the values of "t", but they cancel) and look at the distribution of these values, as in the chart that follows.



In this chart, the majority of times is less than four hours, but there is some possibility that a time to release could go over four hours.  We can model this distribution using the gamma function $f(x) \approx \Gamma$,

Now suppose I don't have the time that LMDC received the order to release.  Then I have a maximum time that it could be, computed as:

**Maximum Time to Release = r - t**

*Times to Release – Report on Pre-COVID Sample*

If I fix "r-t" on the x-axis (too long a period since it includes the time for "e" to occur, then I can see the likelihood from that point to the left. The area under the chart from zero to (r-t) on the x-axis is now computed as the total probability available, and the expected value of r-e is computed conditional on it being less than r-t:

$$\overline{r-e} = \int_0^{r-t} [x] * f(x)dx \Big/ \int_0^{r-t} f(x)dx$$

Note that x is r-e, not r-t.  So the true value of r-e must be to the left of r-t.  If e (time from signature to receipt of e-mail) is zero, then r-t (which is known) is equal to r-e. Alternatively, the largest value that r-e can have is r-t, in which case r is zero (the inmate is released simultaneously with the receipt of the e-mail.  As I know that r-e is less than r-t, on the restricted scale I compute an expected value of r-e, bounded above by r-t.

If "r-t" is less than four hours, then it's already a certainty that time to release is less than four hours.

**Method 2:  The correlation assumption**

An easier computation is to correlate the time to release with the time from the signature to the time to release.  If we know the later, we can predict the former.  The chart below gives a simple example.

Confidence intervals around this regression also allows us to compute the likelihood that a time to release is greater than some value, but in this case we assume that time to release is distributed according to the gamma distribution, that time from signature to release is also distributed as a gamma distribution, and the distribution of the ratio of the time to release divided by it's corresponding time from signature to release is now distributed as a beta distribution.  This keeps the range of possible values for this distribution within [0, r-t] and produces the predicted mean values depicted by the green line on the chart on the next page.

*Times to Release – Report on Pre-COVID Sample*

