UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JACOB HEALEY, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>JEFFERSON COUNTY KENTUCKY LOUISVILLE METRO GOVERNMENT, et al.,<br><br>Defendant. | CASE NO.: 3:17-CV-00071-RGJ-RSE |

# REPORT ON OVERDETENTIONS
# AT LOUISVILLE METRO DEPARTMENT OF CORRECTIONS

August 7, 2023

Analytic Focus
San Antonio, TX

**Table of Contents**

**Summary of Engagement and Conclusions** ................................................................................. 3

**Description of LMDC Records Reviewed** .................................................................................. 4

**Reasons for Release from LMDC** ................................................................................................ 4

    Release on Own Recognizance (ROR) ........................................................................................... 5

    Bond ................................................................................................................................................ 5

    Other Court Order .......................................................................................................................... 5

    Time Out ......................................................................................................................................... 5

    Other Agency Release ................................................................................................................... 6

    AWOL .............................................................................................................................................. 6

    Parole and State Time Out ............................................................................................................ 6

    No True Bill ..................................................................................................................................... 7

    Release if Paid ................................................................................................................................ 7

    Work Credit Time Out ................................................................................................................... 7

    Book and Release ........................................................................................................................... 7

    Deceased ........................................................................................................................................ 7

    Other Hold ...................................................................................................................................... 7

    Requires Review ............................................................................................................................ 8

**Determination of LMDC's Time of Duty to Release** ................................................................. 8

    Statistical Imputation of Duty to Release ................................................................................... 8

    Duty to Release Occurs at the Creation of the Release Report ................................................ 9

**Overdetention Rates and Estimates of Overdetained Individuals** ........................................... 9

**Appendix A:   Estimation Methods** ............................................................................................ 12

**Appendix B:   ElapsedTTR-Report.xlsx** ..................................................................................... 13

**Appendix C:   ElapsedTTR-Imputations.xlsx** ........................................................................... 14

**Appendix D:   LastKnownContactInformation.xlsx** ................................................................ 15

**Appendix E:   AdditionalPlaintiffSampleReview.xlsx** ............................................................. 16

## Summary of Engagement and Conclusions

1. Analytic Focus was retained to review all inmate releases for four months selected by plaintiffs' counsel in the above referenced matter. In addition to independently evaluating the time to release for each inmate, Analytic Focus also determined the type of incarceration and the maximum release time that should apply to each inmate. Further, we applied complementary data regarding whether the inmate was being held for other reasons (described herein). From these various sources, we determined whether the inmate could be included in the class and for those included in the class the time from notification of LMDC for authority to release until the actual release time.

2. After this initial review and the receipt of the number of releases that occurred each month between 2016 and 2021, the special master determined that two additional months from the post-COVID period should also be sampled and processed. Thus, this report included six months worth of records, four pre-COVID and two after the inception of the COVID pandemic.

3. The ultimate request made by the special master was to estimate the total number of overdetentions for the entire class period, determined by extrapolating the six months that were sampled to the full range of months from 2016 through 2021.

4. In preparing this report, I had the following objectives for each inmate in the sampled months:

    a. Determine the time of LMDC's duty to release

    b. Determine the elapsed time from LMDC's duty to release until an individual was released

    c. Determine if the elapsed time was more than 4 hours if the individual's sentence had expired

    d. Determine if the elapsed time was more than 12 hours if the individual was released because of posting of bond or LMDC's receipt of a court order

    e. Provide last known contact information for individuals who may have been overdetained according to the criteria above

5. Conclusions

   a. As shown in the tables in the next sections, 3.28% of the inmates released prior to COVID were overdetained.

   b. 2.61% of the inmates released during or after COVID were overdetained.

   c. Substantial numbers of inmates were not eligible to be in the class because they were being held for transferal to another prison, were AWOL, or were in the home incarceration program.

   d. For a small fraction of the inmates, it was impossible to determine exactly the time from notification to release. These few inmates were treated in two ways, again described below.

## Description of LMDC Records Reviewed

6. Records received from Louisville Department of Corrections (LMDC) were examined for inmates booked in the months of February 2016, March 2016, June 2017, July 2017, January 2021 and October 2022. How an inmate is released impacts the process of release and release timing. This report examines the various ways an inmate can be released, the time to release and factors that relate to the timing of the release.

7. We received paper files for each inmate booked during the six months outlined above and determined the reason for release and the time to release. For records where not all data was available to determine a time to release, a time was imputed. For records where not all data was available, the report date (described in more detail below) was used as the time when the inmate became eligible for release.

## Reasons for Release from LMDC

8. Inmates held in LMDC are released from detention in a variety of ways. The sections below present the different ways that an inmate might be released.

*Release on Own Recognizance (ROR)*

9. ROR releases occurs after an individual is arrested, arraigned and then the court determines they may be released. In the instance for an ROR release, there is no payment of a bond or other fees. The time when an individual is eligible for release begins when the court sends a notice to LMDC that the inmate is released on his or her own recognizance. This process is broken down into the time of receipt, when the information was entered and processed and then ultimately released.

*Bond*

10. An inmate can be eligible for release pending a payment. In this case the court sets a bond amount. After payment of bond, the court sends a notice to LMDC that bond has been paid for the inmate. Then LMDC enters and processes the notice into the system, leading to the release of the inmate.

*Other Court Order*

11. The court may decide to release an inmate that is currently incarcerated without the need of payment. There are a few steps involved in an inmate release as a result of an Other Court Order. The court signs an order and subsequently sends a notice to LMDC that the inmate is to be released. The time between the court's signature and the receipt of the court's notice is not part of the computation of time to release.

12. For an Other Court Order, LMDC receives notification, and then there is an amount of time between receipt of the notice and when the notice is entered in the system. From the time the order is entered into the system until the time the inmate is released is counted as processing time. When the inmate leaves, that is the moment of release. The full process from receipt to release is the time to release.

*Time Out*

13. When an inmate serves his or her full sentence, the end of the sentence is recognized as the day the sentence is completed. The LMDC system almost uniformly recognizes this time as after

midnight of the eligible date. In the case of a Time Out, there is no court order or any other type of paperwork that would trigger a release. The time of release defaults to midnight of that day. Since sentences are calculated in days and not hours, the booking time was used as the time the inmate was eligible for release on his or her Time Out date. For example, if an individual was booked on 01/03 at 8:30 pm and had a 2-day sentence, then he or she became eligible for release on 01/05 at 8:30 pm. Meanwhile if another individual was booked on 01/03 at 12 pm and had a 2-day sentence, then he or she would become eligible for release on 01/05 at 12pm.

14. The time to release is calculated from the time one is eligible for release until the time the inmate leaves.

*Other Agency Release*

15. On occasion, an inmate serves time for multiple offenses for multiple jurisdictions. When an inmate finishes serving his or her sentence at LMDC, but needs to be transferred to another agency, LMDC must wait for the other agency to pick up the inmate. Other Agency Releases were not considered for the overdetention calculations.

*AWOL*

16. Inmates can be granted work release or other conditions for which they can leave LMDC. When they do not return, they are deemed AWOL. AWOL "releases" were not considered for the overdetention calculations.

*Parole and State Time Out*

17. Inmates of the state are also housed in LMDC. In these instances, the state determines when an inmate is to be released. Inmates released on Parole or a state-issued Time Out were not considered in the overdetention calculations.

*No True Bill*

18. On occasion, inmates can be released after a grand jury decides to not indict the individual. Individuals released under a No True Bill were treated using the same rules as someone released using an ROR.

*Release if Paid*

19. A judge can determine that an inmate is to be released once they pay a certain fine. These individuals are then released after payment. Inmates who were released after receipt of payment were categorized similarly as those who had to pay bond.

*Work Credit Time Out*

20. Some inmates had the ability to be released earlier than their original sentence end date as a result of work credits. Similar to individuals released on a Time Out, the booking time was applied to the new earlier date that individuals were eligible for release. Individuals released as a Work Credit Time Out were categorized similarly as those who were released as a Time Out.

*Book and Release*

21. Instances where an individual was never incarcerated. but was merely present to be booked and then subsequently released, were not included in the overdetention calculations as they were never detained.

*Deceased*

22. Inmates who passed away while serving their sentence were not included in the overdetention calculations.

*Other Hold*

23. An inmate can be eligible for release, but LMDC may not always be able to release the individual. For example, an inmate can be held after receiving a court order to be released when another agency, for example, the U.S. Immigration and Customs Office, requests for the individual

to be held longer. Another example may be when a psychiatric hold is placed upon the inmate. This results in a hold that is outside of LMDC's control. For these instances, overdetentions were not calculated.

*Requires Review*

24. Finally, this report was not able to determine classifications for all inmates. These inmates were categorized into the "Requires Review" category. Reasons for this classification included instances where the paperwork did not indicate the reason for release of the inmate and a note on overdetention was not found.

## Determination of LMDC's Time of Duty to Release

25. Duty to release was determined by the type of release. An individual released as a Time Out was deemed overdetained if he or she was released after more than four hours after LMDC's time of duty to release. Individuals released on Bond, ROR, or an Other Court Order were deemed overdetained if he or she was released after more than twelve hours after LMDC's time of duty to release.

26. In the case of bonds, other court orders, bonds, and RORs, the time LMDC received an email informing them of an inmate release was identified as LMDC's time of duty to release.

27. When an email was not located and the time of duty to release was not otherwise clearly indicated, I used two methods to conclude when the duty to release the individual began. The first method is by statistical imputation and the second is an assumption based on the time a Release Report was created concerning the individual.

*Statistical Imputation of Duty to Release*

28. The court orders related to bonds, RORs and other court orders often contain the date and time an order was created or signed. While LMDC's duty to release does not begin until the courts transmit the order to LMDC, the data collected allows an estimate of the probability that the order

8

was transmitted quickly enough to provide LMDC the maximum allowable amount to release an individual. These probabilities serve as estimates of how likely an individual was overdetained.

29. When the date and time or order creation/signature are not available, one can also impute an estimate of how likely an individual was detained by looking at the overall proportion of individuals (with complete information) who were detained and in similar circumstances.

*Duty to Release Occurs at the Creation of the Release Report*

LMDC began processing the release of an inmate by entering a Release Report. This report was timestamped and was used as a part of the inmate release process. In the event that an email was not identified, the timestamp on the Release Report was utilized.

## Overdetention Rates and Estimates of Overdetained Individuals

30. For the pre- and post- COVID periods, two estimates of the number of overdetentions were made. The first estimate discarded any records that were indeterminate (a determination couldn't be made regarding the amount of time from notification to release). This means that the only information used to make an estimate of the overdetention rate was a determination for each inmate as to whether the inmate was in the class or out of the class. For those in the class, the inmate was determined to be overdetained or not overdetained. Thus, the overdetained rate was computed as Overdetained relative to not in class and determined to be in the class, not including the indeterminates.

31. The second estimate of the total number of overdetained makes an estimate of the number of overdetained in the indeterminate group and appropriately adds this number to the total referenced in the previous paragraph. This number is simply the rate of overdetained computed in the preceding paragraph times the number of indeterminate records. In this way, all records reviewed are used for estimate two, whereas estimate one does not use the indeterminates.

32. Both computations are presented formulaically in Appendix A.

33. During the post-COVID sample using report creation times when notification times were unavailable, I found that 66.1% of the individuals were not overdetained, 29.5% of the individuals would not be eligible to be considered as overdetained, 2.5% of the individuals were lacking release times and could not have their overdetention assessed, and 1.8% of the individuals were overdetained. A summary of the results using this method are in the table below and the full data is available in Appendix B.

34. The reviewed post-COVID overdetention rate was lower than the pre-COVID overdetention rate of 3.16%. The overall estimate of the overdetention rate during the class period using this method is 2.99%.

**Table 1 – Computations Using the Creation of the Release Report if E-mail Time is Missing**

| Post-Covid | | | Pre-Covid | | | Combined |
|---|---|---|---|---|---|---|
| **Overdetention Status** | **Count** | **%** | **Overdetention Status** | **Count** | **%** | |
| Not Overdetained | 1,634 | 66.0% | Not Overdetained | 6,818 | 63.5% | |
| Excluded from Population | 731 | 29.5% | Excluded from Population | 3,332 | 31.1% | |
| Unable to Determine | 54 | 2.2% | Unable to Determine | 241 | 2.2% | |
| Overdetained | 56 | 2.3% | Overdetained | 339 | 3.16% | |
| Review Total - Post-Covid | 2,475 | 100.0% | Review Total - Pre-Covid | 10,730 | 100.0% | |
| | | | | | | |
| All Releases Reported by LMDC Post-Covid | 55,466 | | All Releases Reported by LMDC Pre-Covid | 154,017 | | 209,483 |
| Number - No Overdetained | 1,283 | | Number - No Overdetained | 4,978 | | 6,261 |
| Number One: Rate, Without Unable to Determine | 2.31% | | Number One: Rate, Without Unable to Determine | 3.23% | | 2.99% |
| Number - % of Overdetained | 1,282 | | Number - % of Overdetained | 4,975 | | 6,258 |
| Number Two: Rate, With Percent of Unable to Determine | 2.31% | | Number Two: Rate, With Percent of Unable to Determine | 3.23% | | 2.99% |

10

35. During the post-COVID sample using statistical imputations when notification or release times where unavailable, I found that 66.1% of the individuals were not overdetained, 29.5% of the individuals would not be eligible to be considered as overdetained, 0% of the individuals could not have their overdetention assessed, and 1.82% of the individuals were overdetained. A summary of the results using this method are in the table below and the full data is available in Appendix C.

36. The reviewed post-COVID overdetention rate was lower than the pre-COVID overdetention rate of 3.22%. The overall estimate of the overdetention rate during the class period using this method is 3.10%.

**Table 2 – Computations Using Statistical Imputations**

| *Post-COVID* | | | *Pre-COVID* | | | *Combined* |
|---|---|---|---|---|---|---|
| **Overdetention Status** | **Count** | **%** | **Overdetention Status** | **Count** | **%** | |
| Not Overdetained | 1,679 | 66.1% | Not Overdetained | 6,843 | 63.8% | |
| Excluded from Population | 731 | 29.5% | Excluded from Population | 3,332 | 31.1% | |
| Unable to Determine | 0 | 2.5% | Unable to Determine | 208 | 1.9% | |
| Overdetained | 65 | 1.82% | Overdetained | 345 | 3.22% | |
| Review Total - Post-COVID | 2,475 | 100.0% | Review Total - Pre-COVID | 10,728 | 100.0% | |
| All Releases Reported by LMDC Post-COVID | 55,466 | | All Releases Reported by LMDC Pre-COVID | 154,017 | | 209,483 |
| Number - No Overdetained | 1,446 | | Number - No Overdetained | 5,055 | | 6,501 |
| Number One: Rate, Without Unable to Determine | 2.61% | | Number One: Rate, Without Unable to Determine | 3.28% | | 3.10% |
| Number - % of Overdetained | 1,446 | | Number - % of Overdetained | 5,053 | | 6,499 |
| Number Two: Rate, With Percent of Unable to Determine | 2.61% | | Number Two: Rate, With Percent of Unable to Determine | 3.28% | | 3.10% |

11

## Appendix A: Estimation Methods

*No indeterminates included in estimation.*

Categories of outcomes included:

1. Not in Class
2. Not Overdetained
3. Overdetained

Subtotal one is computed as

Subtotal$_1$ = Not in Class + Not Overdetained + Overdetained

$$R_1 = Overdetained\ Rate = \frac{Overdetained}{Subtotal_1}$$

*Indeterminates included in estimation.*

Categories of outcomes included:

1. Not in Class
2. Not Overdetained
3. Overdetained
4. Indeterminate Outcome

A subtotal is computed as

Subtotal$_2$ = Not in Class + Not Overdetained + Overdetained + Indeterminates

$$R_2 = Overdetained\ Rate = \frac{Overdetained + R_1 * Indeterminates}{Subtotal_1 + Indeterminates}$$

## Appendix B: ElapsedTTR-Report.xlsx

[Native Microsoft Excel File]

## Appendix C: ElapsedTTR-Imputations.xlsx

[Native Microsoft Excel File]

## Appendix D:  LastKnownContactInformation.xlsx

[Native Microsoft Excel File]

**Appendix E:  AdditionalPlaintiffSampleReview.xlsx**

[Native Microsoft Excel File]