

July 8, 2024

**Memo for the Record:  Healey et al. v. Louisville Metro Government et al.**

Introduction

A detailed report was submitted in late 2023 to the Special Master summarizing findings regarding overdetentions found in the six months sampled for this research.  This report also extrapolated the estimate of overdetentions in the population of all inmates.  This report identified individuals in the six sample months who were overdetained but did not identify inmates in the full population as information was not available for the full population.

After the report was accepted by the recipients, including both plaintiffs and defendants, Analytic Focus ("AF") was asked to develop a methodology to identify which inmates in the sentence subclass were overdetained using electronic records.  In response, AF worked with LMDC and the contractor staff for XJail to obtain a copy of all records during the class period for any inmate.  AF did not receive the entire XJail dataset as it was not necessary for the task at hand, but rather used a subset of variables in XJail to develop a model to predict whether an overdetention occurred.

AF developed a mathematical model (an algorithm) that used the data found in XJail to decide whether the inmate was to be considered a potential member of the sentence subclass, then determine if that individual was overdetained. AF applied this algorithm to the XJail dataset covering bookings from February 3, 2016 through 2023. Of over 4,278 inmates that had a sentence end date in XJail, the algorithm identified 704 inmates as likely overdetained.  Of the 704, the 96 with the longest times of overdetention (more than 24 hours) were classified as requiring further review. AF requested paper files from LMDC for review by trained AF staff.

Results for the 96 varied in terms of whether these inmates were truly overdetained and whether they even qualified to be in the class.  Table 1 below summarizes the outcomes of the AF review of the 96 allegedly overdetained inmates.

**Table 1: Counts of Overdetained, Not Overdetained, and Indeterminate in 96 Records**

| Category | Start to Finish |
|---|---|
| In class, subclass sentence, overdetained | 38 |
| In class, subclass sentence, not overdetained | 19 |
| In class, subclass sentence, uncertain | 11 |
| Pre-trial (Overdetained status not determined) | 3 |
| Not Class (e.g., HIP, Other Agency Release) | 12 |
| Unsure if in class | 13 |
| Total | 96 |

Of the 96 inmates, 38 can be said to be overdetained after serving their sentence. After a review of the files for each inmate from LMDC, one inmate was found to be held in pre-trial, not an inmate serving a sentence. Eight inmates were not in the class for other reasons, such as they were in HIP or a different program. For 13 of the inmates, AF is not sure if those inmates are in the class. For example, some files were not located for further review, or the files had inadequate documentation. Thus, only 40% of the most severe overdetentions identified by the algorithm can be validated as true overdetentions.

As discussed with the Special Master, a review of the paper files does not resolve all uncertainty about the overdetention determination for an inmate. There are 11 inmates who were serving sentences, but it is unclear whether they were overdetained. Whether inmates in this group were overdetained depends on answers to legal questions. For example, were good time and work credits applied to sentences appropriately?

An issue associated with good time credits makes the determinations described above uncertain. The rules for how much good time credit to give changed twice during the class period. In September 2016, LMDC implemented good time credit. The implementation was in accordance with the amendment of KRS 441.127 that went into effect in July 2016. The state law was revised once again, effective July 2018, increasing the allowable amount of good time credit.

There were three methods in which good time credit could be applied: 1) a good time calculator created by LMDC staff, 2) a memo that described how calculations should be applied, and 3) a straight-forward interpretation of the statute for good time credit.

The good time credit calculator was first used in September 2017. LMDC staff used the calculator (a spreadsheet file) to calculate good time credit.[1] AF has found documents that state the calculator may have performed this calculation incorrectly.[2]

Second, there is a memo describing how good time credit should be applied. While the description is consistent with the calculator for most sentence lengths, there are some differences. For example, a 39-day sentence would receive 8 days good time credit (31 days in jail) while the calculator would award 0 days good time credit (39 days in jail). We found no instances where the calculation used the method described in the memo over the calculator when there was a potential difference.[3]

We found one example of when a straight-forward interpretation of the rules for good time credit was used. A 31-day sentence had 10 days good time credit applied to it, making it 21 days in jail. See Figure 1 below.

**Figure 1**



---

[1] September 20, 2018 Deposition of Arnetta Rochelle Al-Amin. Document 49-1 at pages 110-111.
[2] "Records has not been told any different, but I know on the old 5 day GTC calculator it did not work and you just had to give them the credit." Excerpted from an internal LMDC Records email sent January 4, 2019 included in the release file for an inmate AF reviewed.
[3] Our review was not exhaustive of the entire class period.

AF also has assumed that good time credit should apply only to those serving a sentence for a misdemeanor, but not for a felony. However, there is at least one exception where an inmate was incarcerated for a felony (according to XJail) but still received good time credit.

In addition to the three methods mentioned above, AF has found several occasions where inmates received an amount of good time credit that was irreconcilable with the three methods described above. With a number of different opinions regarding the administration of good time credit, this becomes a legal issue as to which opinion is correct. The issues with sentence credits was unearthed after the additional review of paper files.

The identification of an appropriate rule for awarding good time credit is crucial. There are inmates who appear not to be overdetained but would be overdetained if the sentence were recalculated under an alternate rule. If a method is chosen by the court, additional data requests from the XJail database would be required to determine if it is possible to systematically re-compute sentences according to the new standard.

The issue regarding good time credit then raises an issue for the computation of when an inmate should be released. The results of the AF algorithm may be incorrect due to incorrect input into XJail. The AF algorithm relied on LMDC staff to accurately input a correctly calculated sentence into XJail. The issues above demonstrate there are at least some inaccuracies during the class period.

These problems are the result of having incorrect data in XJail[4] or no data where data should have been retained. The world's most perfect algorithm only works with correct data. Incorrect or missing data make it difficult to correctly identify those inmates who were overdetained. The current system identifies many who were not overdetained as being in the class and overdetained. It also misses inmates who were overdetained but for whom some information is missing from XJail. While it has been (forcefully) argued to AF that there are systems that could readily and quickly identify the overdetentions by scanning and extracting text from the paper files, the persons raising those arguments have no knowledge of the quality and completeness of data in the system. However, the system is only as good as the data entered into it. Therefore, we respectfully disagree – no system can overcome sporadically impaired data.

---

[4] For example we found the following handwritten note the paper file for booking 201718730: "Sentence will not update in XJail as 8/1/17[.]"

This review brought additional legal issues to the attention of AF. For example, LMDC did not have real-time accruals of sentence work credits for its inmates. This resulted in the sentence end date potentially being earlier than the date LMDC had recorded at the last work credit audit. If the court finds LMDC was responsible for keeping real-time calculations of sentences, these individuals would be considered overdetained.[5]

This exercise has identified several issues that need to be resolved by the court. In addition to the ones described above, others are listed (more briefly) below. AF has considered these issues but recognizes that AF is not in a position to make a decision about times to be applied, qualifications to receive good time or work credits, and a host of other stumbling blocks that should be adjudicated by the court.

Legal Issues Preventing Final Determinations (for Individuals)

- What is the standard for how frequently LMDC should update sentence calculations to account for dynamic components like work credits?
- Are Defendants or courts liable for late releases due to misunderstood, unclear, or missing court orders?
- When is LMDC expected to inquire about unclear court orders or about the status of external holds when delays in response could cause an inmate to be overdetained?
- What is the standard for timely transportation after a sentence is served?
- Judges may change a sentence. How much notice does LMDC need for an individual to be considered part of the Sentenced Subclass?
- Should individuals being released due to the accrual of bail credit be considered part of the Sentenced Subclass or the Pre-trial Detainee Subclass?
- Are there additional indicators for HIP in inmate records or XJail or for programs like HIP, in that the individual is not in custody at a physical LMDC facility.

Final Note

A request has been made for Analytic Focus to provide a list of names and addresses of those identified by the algorithm as overdetained. AF is happy to do this, but would like to remind the court and the parties that:

---

[5] For the purpose of this review, AF also considered them overdetained.

analyticfocus.com  |  210.641.2817  |  c.cowan@analyticfocus.com                                                 5

1) AF has determined that several conclusions made by the algorithm are incorrect after a thorough investigation of a sample of paper files.
2) The address information dates from 2016 and is highly likely to be incorrect.  There are methods that can be applied to update addresses to near current addresses.