## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

### *FILED ELECTRONICALLY*

| | | |
|---|---|---|
| **JACOB HEALEY**, *et al.*, | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| **v.** | ) | **Case 3:17-cv-71-RGJ-RSE** |
| | ) | |
| **LOUISVILLE METRO GOVERNMENT,** *et al.*, | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

---

Rather than hire their own expert, engage the magistrate judge for a discovery dispute, or wait to challenge Defendants' expert with the more conventional filing of a *Daubert* motion, Plaintiffs have resorted to throwing stones. The truth is that, contrary to Plaintiffs' misleading narrative, the Defendants have been beyond cooperative—much more than the rules require—in trying to work with Plaintiffs to come to an agreed data set. Apparently unappreciative of Defendants' efforts, Plaintiffs have filed a premature and unsupported motion for sanctions. The motion should be summarily denied for their failure to comply with Local Rules requiring that parties engage in extra-judicial efforts to resolve disputes before they are brought to the Court, but even if the Court considers the motion on the merits, it fails for a multitude of reasons.

<u>Relevant Background</u>

This case was filed on February 3, 2017.  (R. 1.)  An Amended Complaint was filed three days later, on February 6.  (R. 3.)  A Second Amended Complaint was filed a little over a year later, on April 11, 2018. (R. 18.)  A Third Amended Complaint was filed later that year, on November 28, 2018.  (R. 37.)  On January 15, 2021, this Court certified this matter as a Class Action, in part.  (R. 72.)  A Petition to appeal the Court's decision on Certification was filed, with the Sixth Circuit denying that petition on November 24, 2021.  (R. 95.)

Defendants retained an expert to work on data analysis, Plaintiff objected and filed a motion with the court to try to stop Defendants' efforts to analyze the class data.  ( R. 100.)  The Court held a status conference on March 18, 2022 to address "how to proceed in this case and get all the information necessary through the discovery process for use by both parties in litigating this matter." (R. 119, PageID#: 2780.)  The Court focused on how important it was for the parties to come to an agreement on the raw data that needed to be collected, and to eventually get to the same "data points" so the parties were not put in a place to "spend more time arguing the data as opposed to arguing the results of the data." (*Id*. at 2798.)  The parties agreed that the appointment of a special master would greatly assist in moving the case forward, and the Court appointed Hon. Cleveland Gambill on May 27, 2022, to serve in that role.  (R. 123.)

Thereafter, the parties worked collaboratively with the Special Master to move the case forward.  On August 10, 2022, the Special Master held a meeting with the

parties and Dr. Charles Cowan, "a statistical research and design expert retained [by] the Defendants." (R. 125, PageID#: 2828.)   The meeting was "productive" and resulted in an agreement to use Dr. Cowan to "work as collaboratively as possible with the parties, to avoid unnecessary delays, expenses, and analytical issues" in extracting the "minimum 'data points'" from the records. (*Id.* at 2829; R. 184, PageID#: 3082 (Plaintiffs conceding they "consented to use Analytic Focus to collect the data.")) The parties agreed on "sampling techniques which could be used to facilitate an analysis of the records" and "agreed to initially review and analyze available data for the sample months proposed by Plaintiff Class counsel." (*Id.*; R. 184, PageID#: 3082 (Plaintiff conceding they agreed to these sampling techniques)). Notably, the Special Master stated in his status report "that while Dr. Cowan remains an expert for the Defendant, **the Plaintiff class is, at all times, free to retain and consult with its own experts during this process.**" (*Id.* at 2830 (emphasis added)).

Following negotiation with the Special Master about how he was going to assist the parties in reviewing and compiling the data, the parties tendered an Agreed Order for Data Collection and Analysis which was entered by the Court on September 27, 2022. (R. 126.)   The Agreed Order outlined the process the Special Master designed in conjunction with the Parties, the tasks that Analytic was to perform, and specifically laid out a process for communicating with Dr. Cowan:

> 4.  Dr. Cowan shall make himself reasonably available to answer questions and concerns of the parties and the Special Master. Such questions and concerns shall be reserved and raised during Dr. Cowan's regular reporting on the progress of the Work, except

3

in the case of emergency.  If a party or the Special Master has a question they believe requires or justifies being addressed outside the periodic conference calls, they will provide reasonably prompt notice to all parties and the Special Master on the issue or question.  The question or issue will be communicated to Dr. Cowan in writing, and Dr. Cowan's response thereto shall be provided to all parties and the Special Master in writing.  The parties and the Special Master may elect to collectively have a follow up call with Dr. Cowan to address his written response.

(*Id.* at PageID #: 2842.)  Section 7 of that Agreed Order is particularly salient here:

7.  The Parties and Special master agree that the purpose and intent of this Agreement is to develop a database of information that will be deemed reliable and be utilized by the Parties and the Court in determining class membership and any remaining merits issues in the litigation.  The Parties agree that all parties retain their right to challenge the accuracy of the data in court proceedings, and nothing in this agreement shall preclude a party from employing their own expert(s) for whatever purpose in this litigation.  However, Parties shall raise any known issue or question about process, procedure, data collection, analysis or computation as soon as reasonably possible once the issue or question is raised by the Party.  A failure to do so may be considered by the court in addressing the ultimate challenge based on that issue or question.

(*Id.* at PageID#: 2843.)  Defendants further agreed to continue to "bear the cost of Analytic Focus's work."  (*Id.*)

The Special Master's third report summarizes Analytic Focus' substantial efforts to review the sample data, along with all the issues that had been identified during that early stage of the review.  (R. 127.)  On December 14, 2022, Plaintiffs' Counsel sent an email to the Special Master expressing frustration with Analytic Focus and had some recommendations to the Special Master for modifications of the process going forward.  (R. 184-1, PageID # 3092.)  The Special Master responded by arranging a meeting of counsel and Dr. Cowan in person in Louisville.

The Special Master issued a fourth report on January 30, 2023, which explained that Dr. Cowan had circulated a 20-page Interim Report which generated "a number of issues for discussion" and indicated that there "may be missing documentation that may never be found." (R. 128, PageID#: 2849.)  Importantly, "[t]he Special Master restate[d] that **Plaintiff Class remains free to engage its own experts herein to analyze the available data, and to evaluate the progress and conclusions of Dr. Cowan and Analytic**." (*Id.* at PageID#: 2850 (emphasis added.))  Alternatively, the Special Master reminded Plaintiffs they "remain[ed] free to move the Court for appointment of an expert under [FRE] 706." (*Id.*)

The parties met telephonically with the Special Master and Dr. Cowan on February 8, 2023.  (R. 129, PageID#: 2854.)  "During the call counsel had an opportunity to question Dr. Cowan regarding the interim report, the need for additional sampling, the timing of his final report on the initial months in Plaintiffs' sample, the timing to complete review of two additional months of sample data to address the Covid period of the class, the need for data over the entire class period, and Plaintiffs' need to review raw data associated with the review and how that might be addressed." (R. 129, PageID#: 2854-55.)  The parties prepared a plan for going forward, including dates by which Dr. Cowan was expected to provide updated reports.  (*Id.*)  An Agreed Order was entered on March 17, which set these modified deadlines and explained that Analytic "is the entity that the parties have agreed to utilize to extract, analyze and provide data to the parties.  For purposes other than

this **Analytic Focus LLC remains the expert of Defendants**." (R. 131, PageID#: 2861 (emphasis added.)) In accordance with that plan, Dr. Cowan provided an updated report to the parties on March 17, 2023. (R. 132, PageID#: 2863.)

The parties again met with Dr. Cowan and the Special Master on April 24, 2023, to work through Dr. Cowan's March 17 report.[1] (*Id.*; Tr. of 4-24-23 Meeting, attached hereto as <u>Exhibit A</u>.) The meeting was followed by the Special Master's sixth report where he explained that "the parties agreed Analytic would perform some additional analysis and produce to the parties a supplement to the March report..." (R. 132.) The supplement was in direct response to Plaintiffs' request "to compare Analytic's imputed time of release for certain inmates to the methodology used by Plaintiffs in their own analysis..."[2] (*Id.* at 2863.) The parties agreed to additional time to produce records, and to extend the due date for Dr. Cowan's supplemental report. (*Id.*) Plaintiffs also informed Defendants that they were abandoning claims for persons on Home Incarceration. (*Id.*) As relayed in the Special Master's seventh

---

[1] In their Motion, Plaintiffs' quote one sentence out of a 158-page transcript to suggest that the Special Master was "frustrated" with Dr. Cowan. (R. 184, PageID#: 3085.) A full reading of the transcript shows that Special Master was "not throwing blame at anybody," but just encouraging the Parties to continue to make progress. (Ex. A, p. 109-110.) The Special Master specifically raised the issue of how Dr. Cowan was to communicate with the parties. (*Id.* at p. 126.) Dr. Cowan responded, "I've tried to be responsive... within the same day." (*Id.*) The Special Master responded: "I know you have...I've noticed... I've been copied on those emails." (*Id.*) A full of reading of that transcript shows the collaborative process that both parties were engaged in with Dr. Cowan and the Special Master.

[2] To be clear, Plaintiffs' "analysis" seems to be limited to the late Hon. Jim Ballinger's paralegal's review of boxes of records. Defendants asked to depose the paralegal that carried out this review, but Plaintiffs objected. Since that time, Plaintiffs have not retained any expert to perform a statistical analysis in this case.

report, the parties agreed to extend the time for submission of a "final report" from Analytic Focus to August 7, 2023. (R. 134.)

Analytic Focus produced that report on August 7, 2023. (R. 138.) The Special Master held a conference call with the parties and Dr. Cowan on August 9 to discuss the August 7 report. A further zoom conference was held with Dr. Cowan on August 21. (*Id*.) The Special Master entered his final report on October 12, 2023, wherein he conveyed his belief that "the essential tasks of compiling the relevant data for the class period utilizing appropriate analytical processes and agreed upon sampling techniques, has been achieved herein, as set forth in the final report presented to counsel on or about August 7, 2023, by Dr. Cowan/Analytic Focus." (R. 139, PageID#: 2887-88.) The Special Master suggested that a status conference be set to determine whether "the [Special Master] should [ ] be relieved of his role…". (*Id*. at PageID#: 2888.)

On November 3, 2023, it was Plaintiffs who moved to return the case to active litigation to establish pre-trial deadlines and a trial date. (R. 142.) The Court held a status conference soon thereafter on November 29. (Tr. of Status Conference, attached as Exhibit B.) During that conference Plaintiffs explained that Dr. Cowan's process of looking at the four-months Plaintiffs had earlier reviewed, and further considering two post-Covid months "took a lot of time." As Plaintiffs explained at that time:

> [T]hat was not the fault of Dr. Cowan, [or] defendants'
> counsel. It was [in] large part defendants trying to identify
> what actually was the universe of documents that might

7

bear on these issues and get them in a format that Dr.
Cowan could use and get those to Dr. Cowan.

(Ex. B, p. 5.)  The Plaintiffs went on to explain how they did "extrapolate" those numbers and suggested to the Court that Plaintiffs "do not believe at this point that there's a significant dispute among the parties over the numbers," but that there was a "dispute as to what value should be assigned to every over-detained hour, every over-detained minute."  (*Id*. at p. 7.)  Plaintiffs articulated their dismay that Defendants did not respond to their earlier conveyed settlement demand and asked that the matter be brought back to active litigation.  (*Id*. at p. 8.)  Plaintiffs further explained to the Court that there were some individuals for whom Dr. Cowan could not determine if they were over-detained due to a lack of documentation.  (*Id*. at 9-10.)  Defense counsel articulated several issues that it believed were outstanding at the time, including that "Dr. Cowan has not completed an analysis of the data."  (*Id*. at 12.)  Defendants also expressed the need for discovery, including "depositions of the named plaintiffs."  (*Id*. at p. 20.) The Court proposed March 1, 2024, as a discovery cutoff.  (*Id*. at p. 30.)  In Response, Plaintiffs told the Court that date worked because, in their words, "[w]e're done now, basically," suggesting that all was left was for Plaintiffs to depose the named Plaintiffs. (*Id*.)

After the Status Conference in November, counsel for Plaintiffs emailed Defendants, relaying that their expectation of "Dr. Cowan's strict adherence" to the Agreed Order for Data Collection that was entered when the Special Master began assisting with the case (addressed *supra)*.  (R. 184-6.)  Defense counsel responded to that email:

> Our intention is to keep the data collection process as collaborative and transparent as possible and by agreement. Seemingly the points as structured [in the Agreed Order] may or not make sense as that process moves forward, but we are ready to have that dialogue with you as well…. Since the Order… was part of the process of working with the Special Master one could question whether that Order remains in effect. However, fighting about that is not productive either. Let's have a collegial professional dialogue about what makes sense to move this litigation forward to resolution.

(*Id*. at PageID#: 3159.) Plaintiffs now complain that there were no conference calls with Dr. Cowan following the Special Master's completion of his duties but concede that they did not raise the matter with the Court. (R. 184, PageID#: 3087.)

On February 26, 2024, the Court entered a Proposed Agreed Order extending discovery through August 1, 2024. (R. 164.) On June 4, less than two months before discovery was set to close, Plaintiffs again sought to amend their Complaint through a "Supplement" to their Third Amended Complaint. (R. 171.) Plaintiffs' motion was granted, and their Third Amended Supplemental Complaint was filed of record on July 26, 2024. (R. 179.)

On July 3, in the interest of providing more data in advance of a long-scheduled mediation, Defendants voluntarily provided updated sentencing class data from Analytic Focus. The data was sent with an explanation that Analytic had also reviewed "the individual files for anyone who showed an over detention over 24 hours to verify if that was correct." (2024-7-3 Email from McLandrich to Plaintiffs, attached as <u>Exhibit C</u>). After review of the actual files "[s]ome were found not to be over detained at all." (*Id*.) Counsel explained that the previously produced data had

contained "a projected number of over detentions that may or may not be persons who were actually over detained." (*Id.*) Plaintiffs responded that there were "discrepancies" in the data, and Defendants promptly got on a phone call to discuss it. Plaintiffs were disappointed that overdetention numbers were lower in recent reports than had been included in earlier projections.

This should not have come as a surprise to Plaintiffs as the report thoroughly addressed the "estimates of the number of overdetentions" upon which it was based. (R. 184-5, PageID#: 3151.) After reviewing additional documentation that was collected and made available, Dr. Cowan determined that some of the individuals who were originally thought to be overdetained were not actually overdetained. The analysis produced in July 2024 was based on this refined data.

Plaintiffs threatened to back out of the long-scheduled mediation, but Defendants continued to provide additional data and explanation. In particular, the "discrepancies" that drew Plaintiffs' ire related only to a small sub-class of the total population of claimants:

> With respect to the mediation, while it is your prerogative to pull out of the mediation we do not believe that is appropriate and hope you will not do so. Note that the issue with the sentence subclass data is only a small portion of the overall class. The issue you raise and the 2024 data does not concern the pre-trial subclass. Also as you will see in the new Analytic report the overall refinement of the data has not significantly impacted the overall projected over detention rate.

(7-18-2024 email, attached as <u>Exhibit D</u>). Plaintiffs ultimately agreed to mediate.

When the parties mediated the case on August 5, they made an inordinate amount of progress but were ultimately unsuccessful in resolving the case. Apparently disappointed that the parties could not come to a final agreement in that session, Plaintiffs filed the presently pending Motion for Sanctions. (R. 184.) This motion is a thinly veiled attempt to increase Defendants' cost of litigation by seeking the appointment of a new court appointed expert with the expectation that such an inordinate increase in the cost of litigation will force Defendants to concede to Plaintiffs' settlement demands.

As best Defendants can deduce, Plaintiff's primary complaints are that 1) Defendants have not made Dr. Cowan available for conference calls following the Special Master's completion of his duties, 2) Plaintiffs do not agree with the data and conclusions contained in Dr. Cowan's most recent analysis regarding the sentencing-subclass, 3) Analytic Focus identified "Legal Issues Preventing Final Determinations," and 4) Defendants have "misrepresented their expert's intent and ability to present the necessary data to the parties" while "sequester[ing] their expert while it corrupted the raw data with statistical manipulations." (R. 184 at PageID#: 3086-3088, 3090.) As a result of these complaints, Plaintiffs suggest they "no longer [have] any faith in Data Analytics' ability or willingness to produce independent and transparent data that the parties and the Court can rely on." (*Id.*, PageID# :3088.)

Argument

## I.     **Plaintiffs Failed to Follow the Process for Filing a Discovery Motion.**

Plaintiffs cite Federal Rule of Civil Procedure 16(f) as the basis for their motion, suggesting that Defendants have "fail[ed] to obey a pretrial order." (R. 184, PageID#: 3089.) Instead of raising the issue with the magistrate judge or filing a traditional discovery motion, Plaintiffs have creatively attempted to bypass all the normal requirements for filing such a motion by filing a *Motion for Sanctions*.

Plaintiffs have filed the instant motion without engaging in any effort to resolve the dispute notwithstanding the Local Rule that requires "[p]rior to filing a discovery motion, all counsel must make a good faith effort to resolve extrajudicially any dispute relating to discovery." LR 37.1.[3]

## II.    **Plaintiffs' Motion for Sanctions Must be Denied.**

Plaintiffs ask the Court to impose sanctions for purported violations of Rule 16(f), 37(B)(2)(A), and 28 U.S.C. 1927. (R. 184, PageID#: 3090.) However, Plaintiffs conveniently bypass the rules and processes which a Court is to follow when confronted with such serious allegations. First, the Court must determine whether a party violated the Order at issue. Second, only if the Court determines that an Order was violated, it is to consider four factors in determining an appropriate sanction. *See Meherg v. Pope*, No. 1:10CV-00185-JHM, 2012 WL 12996019, at *1 (W.D. Ky.

---

[3] Plaintiffs also failed to certify that they had attempted to resolve the dispute prior to filing. (LR 37.1 ("The moving party must attach to every discovery motion a certification that counsel have conferred and are unable to resolve their differences. The certification must detail counsel's attempts to resolve the dispute."))

June 20, 2012) (additional citations omitted) (addressed *infra*).  Those four factors follow:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the movant was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered.

*Id.*  Notably, Plaintiffs fail to engage this four-factor analysis at all in their Motion.

## A.    Defendants Did Not Violate the Agreed Order.

As a preliminary matter, it is unclear whether the Agreed Order that Plaintiffs reference is still in effect.  This matter was raised with Plaintiffs in December 2023 (*see* R. 184-6, PageID#: 3159), but Plaintiffs did not further engage the discussion.[4] Instead of promptly raising the issue with the Court, Plaintiffs sat on this disagreement and now try to hold Defendants responsible for purported violations of it.  Ironically, Plaintiffs motion should be denied on this basis alone as the Order it cites addresses this very issue:

> Parties shall raise any known issue or question about process, procedure, data collection, analysis or computation as soon as reasonably possible once the issue or question is raised by the Party.  A failure to do so may be considered by the court in addressing the ultimate challenge based on that issue or question.

---

[4] On December 4, 2023, Defendants' counsel responded to Plaintiffs' email wherein they referenced the Order by explaining that the Order "may or not make sense as [the data collection] process moves forward," pointing out that it was "part of the process of working with the Special Master," leaving one to "question[] whether the Order remains in effect." (R. 184-6, PageID#: 3159.)  Plaintiffs did not seek clarity on this point and waited ten months to raise it with the Court in the pending motion.  Notably, the Order discussed how the parties would work with the Special Master on data collection and does not address what the process would be if the Special Master were relieved of his role.

(R. 126, PageID#: 2843.)   Plaintiffs' failure to raise this disagreement about the continued application of the Agreed Order for Data Collection and Analysis when it learned of the dispute, nearly a year ago, should be "considered by the court in addressing the [Plaintiffs']…challenge based on that issue or question." *(Id.)*  Even if one puts aside the fact that Plaintiffs sat on this dispute for 10-months and now seek to weaponize it, the Defendants did not violate the Court's Order.

First, Plaintiffs criticize the fact that they have not had access to Dr. Cowan for conference calls throughout 2024.   The Order that Defendants purportedly violated was very clear in outlining how Plaintiffs were to have access to Dr. Cowan:

> 4.  Dr. Cowan shall make himself reasonably available to answer questions and concerns of the parties and the Special Master.   Such questions and concerns shall be reserved and raised during Dr. Cowan's regular reporting on the progress of the Work, except in the case of emergency.   If a party or the Special Master has a question they believe requires or justifies being addressed outside the periodic conference calls, they will provide reasonably prompt notice to all parties and the Special Master on the issue or question.   **The question or issue will be communicated to Dr. Cowan in writing, and Dr. Cowan's response thereto shall be provided to all parties and the Special Master <u>in writing</u>.**  The parties and the Special Master may elect to collectively have a follow up call with Dr. Cowan to address his written response.

(R. 126, PageID#: 2842 (emphasis added)).   Nowhere does it say that Plaintiffs are entitled to the access they now complain of not being given.   Importantly, Dr. Cowan and Analytic are Defendants' Expert.   Notwithstanding, Defendants have been beyond cooperative in providing draft reports and feedback from Dr. Cowan

throughout these proceedings—access that Plaintiffs are not entitled to, especially as this case has now returned (at Plaintiffs' request) to "active litigation." Indeed, the very issues Plaintiffs now raise are the result of the Defendants *following* that very process – Defendants have provided Dr. Cowan's answers to the questions raised by Plaintiffs *in writing*, despite no clear continuing obligation to do so.

Second, to the extent that Plaintiffs disagree with the data and conclusions contained in Dr. Cowan's most recent analyses (*see* R. 184, PageID#: 3087-3088), they have means by which they can challenge it. They have been reminded several times by both the District Judge and by the Special Master that they could retain their own expert. (*See* R. 126, 128, 131, 184.) In due course, upon the issuance of Dr. Cowan's report they will have an opportunity to depose him. Finally, if they sincerely believe that Dr. Cowan is unqualified, or his report is unreliable, then they will be entitled to file a *Daubert* motion in advance of trial. The fact that Plaintiffs do not agree with Dr. Cowan's findings is not a basis for sanctions, and Plaintiffs have cited no law to support their contrary position. Again, the Parties and the Court expected there might be disagreements about the data at the end of the day, and addressed it in the earlier Agreed Order that Plaintiffs now seek to weaponize:

> The Parties agree that all parties retain their right to challenge the accuracy of the data in court proceedings, and nothing in this agreement shall preclude a party from employing their own expert(s) for whatever purpose in this litigation.

(R. 126, PageID#: 2843.) Again, Plaintiffs have made no effort to retain their own expert. The Parties also agreed that a disagreement with the numbers produced by

Dr. Cowan was not itself a basis for challenge of his work and that any issues with the data collection were to be timely raised and that a failure to timely raise them could then be considered by the Court. (R. 126, Page ID#2843 at Para. 7.) That is exactly what is happening here. A complaint about the data numbers with no principled basis other than not liking the number. The complaint is not one of methodology, just outcome. Even then, the basis went unchallenged until this motion. The Court can take that failure to timely raise the issue into account as anticipated by the Parties and the Court in the referenced Order. Noteworthy also is that Plaintiff relies upon the data for its demand but has its own projection of the data to the total class and for total hours of over detention, without ever producing their own calculation to support the projection of hours they cite in their Motion.

Third, Plaintiffs criticize Dr. Cowan for "inject[ing] [Legal issues] into its work to introduce uncertainty and artificially reduce the size of the class weeks before mediation." (R. 184, PageID#: 3088.) Nothing could be further from the truth. In fact, the impact that "legal issues" would have on the statistical analysis was discussed at the April 24, 2023 meeting with the Special Master and Plaintiffs' counsel. For context, counsel for Plaintiffs had raised a question regarding the imputation of data from samples to the larger class. In response, Dr. Cowan made clear it was a "legal point," and it did not even occur to him because it "would be a legal issue, not a statistical issue." (Ex. A, p. 111.) What Plaintiffs now criticize are a list of "Legal Issues" that will have an ultimate impact on class size, or the total number of hours of wrongful detention, including:

1. What is the standard for how frequently LMDC should update sentence calculations to account for dynamic components like work credits?
2. Are Defendants or Courts liable for late releases due to misunderstood, unclear or missing court orders?
3. When is LMDC expected to inquire about unclear court orders or about the status of external holds when delays in response could cause an inmate to be overdetained?
4. What is the standard for timely transportation after a sentence is served?
5. Judges may change a sentence. How much notice does LMDC need for an individual to be considered part of the Sentenced Subclass?
6. Should individuals being released due to the accrual of bail credit be considered part of the Sentenced subclass or the Pre-trial Detainee Subclass?

(R.184-9, PageID#: 3176.) To be clear, Dr. Cowan has not taken any position on these issues. He identified these issues because he needs the answers to these legal questions to come to more precise statistical conclusions. Plaintiffs concede these "are not questions Analytic Focus was tasked with answering," and then proceed to hypocritically criticize Dr. Cowan for identifying (not answering) these questions. The suggestion that these legal issues were identified to "introduce uncertainty and artificially reduce the size of the class" is preposterous.

Finally, Plaintiffs most outlandish claim is that Defendants have "misrepresented [Dr. Cowan's] intent and ability to present the necessary data" while also "sequester[ing] their expert while it corrupted the raw data with statistical manipulations." (R. 184, PageID#: 3090.) Notably, this bombastic and offensive argument is made despite any support or citation to the record. (*Id.*) Plaintiffs agreed to the use of Dr. Cowan and Analytic Focus. (R. 125, PageID#: 2829.) They were reminded no less than three times that they could retain their own expert. On at

17

least one occasion, 18 months ago, they were also reminded of their ability to petition the Court under FRE 706 for the appointment of an expert. (*See* R. 128, PageID#: 2850.) Plaintiffs have not taken any affirmative steps to prove their own case. Instead, they have criticized and complained, all while insisting that Defendants continue to foot the bill for expert discovery in this case. Plaintiffs' argument that Defendants have made misrepresentations to the Court is beyond the pale, and wholly inconsistent with the record that was so well developed by the Special Master.

## B. Even if the Agreed Order Was Violated, Sanctions are Not Appropriate.

Defendants did not violate the Court's discovery order, but even if they had that is only the beginning of the inquiry. While Plaintiffs conveniently overlooked this step in its abbreviated argument in support of sanctions, even when a party violates a discovery order, the Court must still consider the following four factors in determining an appropriate sanction:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the movant was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered.

*Pope*, 2012 WL 12996019, at *1 (additional citations omitted). None of these factors weigh in favor of any sanction, much less the highly punitive sanction that Plaintiffs have proposed.

First, notwithstanding Plaintiffs' sensational allegations, the Defendants have not acted in bad faith. Quite to the contrary, the record shows that Defendants have

been beyond cooperative in working with Plaintiffs to come to an agreeable, but accurate, data set in this case.  Furthermore, even after the matter was returned to "active litigation," the Defendants have repeatedly shared work product in advance of a final report being produced, also in the spirit of cooperation.  It is notable that Plaintiffs have neither noticed (nor requested) a deposition for Dr. Cowan nor retained their own expert, as is their right.

Second, the Defendants have not failed to cooperate in discovery, but even if they had, the Plaintiffs have not been prejudiced as Defendants have produced all the "raw data" to Plaintiffs who have repeatedly been reminded that they were free to retain their own expert if they were dissatisfied with Dr. Cowan's work.  Of course, Plaintiffs have not retained any expert to evaluate the data or the reports that have been produced.  To the contrary, Plaintiffs seemed quite content to continue to utilize Dr. Cowan (at Defendants' cost) until they decided that they did not like Dr. Cowan's conclusion that the actual number of overdetained hours was less than Plaintiffs originally thought.  They provide no empirical basis for their disagreement.

Third, the Court is to consider "whether [Defendant] was warned that failure to cooperate could lead to the sanction."  No such warning has ever been issued.  In fact, the Plaintiffs have never even raised these issues with the Court prior to the filing of their instant motion.

Finally, the Court is to consider "whether less drastic sanctions were first imposed or considered."  They were not.  Notwithstanding the Court's admonition that "Parties shall raise any known issue or question about process, procedure, data

19

collection, analysis or computation as soon as reasonably possible," (R. 126, PageID#: 2843), the Plaintiffs have not raised any of these objections with the Court until now. As the Court previously advised, such a failure to timely raise objections "may be considered by the court in addressing the ultimate challenge based on that issue or question." (*Id*.)

## C.   <u>The Sanctions that Plaintiffs Seek Are Unreasonable.</u>

Without any legal support, Plaintiffs demand "an interim award of attorneys' fees and costs," "an award of attorneys' fees and costs incurred since the Sixth Circuit's denial of Defendants petition for permission to appeal this Court's class certification decision," and "an order appointing a qualified auditor to collect the data subject to the Court's previous Order, with Defendants to bear the cost." (R. 184, PageID#: 3090.) Even if the Court found Defendants violated the Agreed Order and that sanctions were appropriate, Plaintiffs have not offered any support for the sanctions they seek.

Particularly offensive, after seven years of litigation, Plaintiffs now ask the Court to effectively "start over" by appointing an "auditor" at Defendants' cost. (*Id*.) Plaintiffs have been advised repeatedly throughout this litigation that they could retain their own expert and were even reminded of their ability to petition under FRE 706. (R. 128, PageID#: 2850 (advising Plaintiffs of both right to obtain own expert and right to petition for appointment of expert under FRE 706).) Plaintiffs did not do this. Instead, they waited until they got data they did not like. Only upon learning that the number of detentions was less than what they had projected did they raise

concerns with the Court about Dr. Cowan, again without ever following the prescribed process for discovery disputes. This is a flagrant attempt by Plaintiffs to impugn a highly qualified expert, avoid statistically sound conclusions about the size of their own class, and force the Defendants to shoulder the burden of their own regrets about the way they have (or have not) litigated this case. If Plaintiffs wish to retain an expert, they can still do so—but it should not be on the Defendants' dime, and certainly not on the basis of frivolous and completely unsupported allegation of bad-faith sanctions.

<u>Conclusion</u>

Defendants have bent over backwards to cooperate with Plaintiffs and work to achieve an agreeable data set. Defendants have been transparent, and provided information that is clearly work-product to achieve this goal. What Plaintiffs do not seem to appreciate is that, at the end of the day, this is still an adversarial proceeding. To the extent that Plaintiffs have issues with the Defendants' expert or his conclusions, there is a time and a place for addressing those concerns. Plaintiffs can retain their own expert, file a *Daubert* motion, or cross-examine Dr. Cowan on the stand and the jury can decide whether Dr. Cowan is to be believed.[5]

The Court should deny Plaintiffs' motion for sanctions, allow the parties to complete fact discovery, set an expert-disclosure deadline, and allow the parties to proceed to briefing the substantive issues in this case. Alternatively, the Court

---

[5] Plaintiffs have threatened to take Dr. Cowan's deposition, but as of this filing have never even asked for deposition dates for Dr. Cowan.

should deny the Plaintiffs' instant motion and reappoint the Special Master to assist the parties in working through Plaintiffs remaining concerns.

Respectfully Submitted,

/s/ *William H. Brammell, Jr.*
William H. Brammell, Jr.
Kayla M. Campbell
WICKER / BRAMMELL PLLC
323 West Main Street, 11th Fl.
Louisville, Kentucky 40202
(502) 780-6185
bill@wickerbrammell.com
kayla@wickerbrammell.com

and

Richard Elder
Assistant Jefferson County Attorney
200 South Fifth Street, Suite 300N
Louisville, KY 40202
(502) 574-3493
richard.elder@louisville.gov

and

John T. McLandrich
Mazanec Raskin & Ryder Co., LPA
100 Franklin's Row
34505 Solon Road, Suite 100
Cleveland, OH 44139
(440) 248-7906
jmclandrich@mrrlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been served on this 13th day of September, 2024, via the Court's ECF system, which will send electronic notice to counsel of record.

/s/ William H. Brammell, Jr.
William H. Brammell, Jr.