UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Filed Electronically*

| | |
|---|---|
| JACOB HEALEY, *et al.*         )<br>                               )<br>            PLAINTIFFS       )<br>                               )<br>v.                             )<br>                               )<br>LOUISVILLE METRO GOVERNMENT,   )<br>*et al.*,                      )<br>                               )<br>            DEFENDANTS.        ) | Case No. 3:17-CV-00071-RGJ-RSE |

## PLAINTIFFS' CLASS REPLY IN SUPPORT OF MOTION FOR SANCTIONS

This is not a discovery dispute. To the extent there was a discovery dispute, it was taken up by the Court at the January 20, 2022, hearing and resolved with the appointment of a Special Master. This isn't a petty plaintiff's temper tantrum, either. Before the Court is the matter of how to deal with Defendants' total disregard for this Court's Orders and misrepresentations to both the Court and Class counsel, resulting in more than two years of wasted time.

At the hearing leading to the appointment of the Special Master, the Court expressed its concern that the case could not move forward until there was a compiled dataset that all parties and the Court could rely on. Exhibit 1, Hearing Transcript, pp. 17-20, 23-24, 26-31.

> What the court doesn't understand is why we can't stop, push pause, and figure out right now how to get a common dataset. … a set of information to be culled from the very vast quantity of documents that are out there, agree upon what information you want culled from those documents, and then you all take that stuff to whoever you want to hire, do whatever you want with it, but the first answer that we will all get is the size of the class.

*Id.*, p.23.

The Court wanted an objective, independent, and transparent process by which all available, relevant documentation would be collected and then used by the parties to address the fundamental questions on which the resolution of this case depends. *Id.* p. 18, 31, 35-36. "There is no point in you getting your own set of base data and you all getting your own set of base data and then nobody agrees on what they're talking about and then they blame it on the fact that the base data's different. . . . I'm not talking about any analysis whatsoever." *Id.* p. 30. "And what I don't want to do is get through all of this process and then have you completely disagree about the size of the class which I fear there's a potential for that right now. We're not going to do that." *Id.,* p.42.

With the assistance of Judge Gambill, the parties came to an agreement on the information that would comprise this dataset, presented it to the Court in the form of an Agreed Order, and, upon review, the Court entered the Order. Dr. Cowan and Analytic Focus were to collect and review the raw data and then provide the parties with 1) the name and last known contact information of each class member, 2) the date and time each was entitled to be released, 3) the date and time each was actually released, and 4) the amount of time between the duty to release and actual release. DN 126.

The Court was emphatic that this process should simply produce the data without any manipulations ("These are not things that require an analysis." Ex. 1, p. 30). The Court also wanted "a fully transparent understanding of the dataset." *Id.*, p. 29. Defendants admit that they purposely disregarded the Court's admonition and the explicit terms of the Agreed Order. The result is incomplete and inconsistent "analysis" on which neither the Court nor the Class can rely.

Defendants' Response to the Class's Motion for Sanctions is nothing more than an exercise in deflection and warrants little consideration. They argue that Defendants are no longer bound by the Agreed Order. The Court hasn't vacated that Order and neither party has ever requested that it be vacated. It remains in full force and effect. Defendants have admitted as much in the joint status report filed in January 2024. ("Analytics Focus continues its work pursuant to the Agreed Order for Data Collection and Analysis.") DN 154. In their Response to Motion to Return to Active Litigation, Defendants advised the Court that Dr. Cowan was working on providing the remaining information outlined in the Agreed Order. DN 146, Page ID 2900. Moreover, at the status hearing on November 29, 2023, Defendants represented to the Court that they had been in discussions with Dr. Cowan to determine "what the best process would be to harvest that data for the remaining class people." DN 147, Page ID 2954, Hearing Transcript, p.13.

Defendants also accuse Plaintiffs of failing to timely object to Cowan's reporting. The facts set forth in the present briefing illustrate the fallacy of this argument. In addition, the Joint Status Reports filed in February and April 2024, both note a dispute over Plaintiffs' request to discuss with Dr. Cowan "the process, timeline, technological needs, complexities, and issues that have arisen in completing the work assigned by the Agreed Order." DN 162, Para.6; DN 165, Para.7. Dr. Cowan's vapid report was not provided until July 8, 2024.

Defendants fault Plaintiffs for failing to petition the Court to appoint an expert, and not attempting to resolve these issues extra-judicially. The Court did not have to appoint an expert to extract neutral data because Defendants represented to the Court and to Plaintiffs that Dr. Cowan would perform the work assigned him by the Agreed Order in an independent, objective, and transparent manner. The present motion seeks, among other things, an order replacing him.

Finally, Defendants continue to beat the drum that Plaintiffs should have hired their own expert to extract this data. This was rejected by the Court two years ago and was at the heart of the justification for collecting and reporting an unbiased set of data. At the January 20, 2022, hearing, Defendants argued that they should control the data that gets disclosed. (*Id.* pp.32-33). The Court rejected that argument.

> MR. MCLANDRICH: Right. And so -- and so my suggestion has sort of been and is let us complete what we're doing and see what data we get. And once we see the data, we may well share it. What I'm not willing to agree to is to have their fingers in the pie while I'm doing that work. If it bakes out as a pie and it's worthwhile data, I'll share it with them for the reasons that you're suggesting, but to suggest that they get to be part of controlling my process of having my person do that work, I'm not agreeable to that.
>
> THE COURT: Well, here's my problem. Let's just say you go through that process and you pay for that process, okay, then are you saying that they either need to rely on your extraction of that or pay for their own?
>
> MR. MCLANDRICH: I'm saying they can look at my extraction and either agree that it's appropriate or determine that it's inappropriate. They're always privileged to hire their own expert and do the work should they want to do it**.** What I'm suggesting right now is they may not need to. If they agree it's appropriate, then they don't need to. If they think it's inappropriate, then they're free to go do what they want to do. They're free to do it now as they have been throughout the duration of the case.

*Id.*, p.32-33.

The Court rejected the proposal that experts should battle over the content of the available data: "I think that's why the court is leaning towards an appointment of an independent auditor to get you both a dataset that you agree on because you going through what is a very lengthy process and them disagreeing with it or it not having all the information they want from that extraction, then aren't we just going to have to do all this again?" *Id.*, p. 34. The Court couldn't have been more prescient. Here we are.

## CONCLUSION

Given the size, complexity, and importance of this litigation, the wasted time and resources, and Defendants' unapologetic admission of fraud on Plaintiffs and the Court, the most severe sanctions should be levied, including striking Defendants' pleadings and entering a default.

Respectfully submitted,

/s/ *Laura E. Landenwich*
GARRY R. ADAMS
LAURA E. LANDENWICH
ADAMS LANDENWICH LAY, PLLC
517 West Ormsby Avenue
Louisville, KY  40203
garry@justiceky.com
laura@justiceky.com
 (502) 561-0085

And

Gregory A. Belzley
P.O. Box 278
Prospect, KY  40059
(502) 292-2452
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on September 27, 2024, the above was electronically filed with the Clerk of the Court by using the CM/ECF filing system and copied to all registered CM/ECF participants in the above-styled action.

/s/ *Laura E. Landenwich*
LAURA E. LANDENWICH