UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*FILED ELECTRONICALLY*

| | |
|---|---|
| JACOB HEALEY, *et al.*,) | |
| ) | |
| PLAINTIFFS) | |
| ) | |
| v.) | Case 3:17-cv-71-RGJ-RSE |
| ) | |
| LOUISVILLE METRO) | |
| GOVERNMENT, *et al.*,) | |
| ) | |
| DEFENDANTS.) | |

DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENT TO ITS MOTION FOR SANCTIONS

Plaintiffs have provided the Court with a supplement to their motion for sanctions which includes, according to Plaintiffs, additional evidence that Analytic Focus' work is unreliable. (R. 194). Plaintiffs are wrong for several reasons articulated herein. Making matters worse, however, Plaintiffs made no effort to confer with defense counsel to understand the perceived discrepancies before putting their misleading arguments into the record. Rather, Plaintiffs continue to levy unfair accusations of incompetence while standing on the sidelines— not hiring their own expert to perform any analysis of the data, despite being repeatedly reminded that they remain free to do so. (*See* R. 126, 128, 131, 184).

In the supplement, Plaintiffs identify 11 inmates they believe were "overdetained" members of the sentence subclass who are not listed in the Sentencing

Subclass Spreadsheet (R. 194-2) that Analytic Focus provided a couple months ago. For each of those inmates, there is an explanation for their exclusion from the Sentence Subclass Spreadsheet.[1]  Before providing that explanation, there are two key points that should be considered.

First and foremost, the Sentence Subclass Spreadsheet (R. 194-2) that is the subject of the Plaintiffs' most recent objection was created to aid in mediation by estimating the total size of the subclass based on the electronic records pulled from xJail, the booking software formerly used by LMDC. The Spreadsheet was **never** intended to be, nor was it represented as, a comprehensive and final list of all members of the sentence subclass.  As Plaintiffs understand, there were a tremendous number of bookings and releases that were processed during the relevant class period.  As such, Analytic Focus has relied on an algorithmic review of the electronic records.  Paper records, including incident reports like those attached to Plaintiffs' Supplement (R. 194-1), with respect to the Spreadsheet at issue were only used to confirm the status of certain persons screened in by the xJail data review, not as a basis to develop the spreadsheet.  That fact has not been concealed from Plaintiffs:

> Analytic Focus ("AF") developed a mathematical model (an algorithm) that used the data found in XJail to decide whether the inmate was to be considered a potential member of the Sentence Subclass, then determine if that individual was overdetained. AF applied this algorithm to the XJail dataset covering bookings from February 3, 2016 through 2023. Of over 4,278 inmates that had a sentence

---

[1] Had Plaintiffs attempted to engage in any dialogue with defense counsel regarding these individuals prior to filing their mis-directed "supplement," this information could have been shared and the matter resolved extrajudicially.

2

> end date in XJail, the algorithm identified 704 inmates as likely overdetained. Of the 704, the 96 with the longest times of overdetention (more than 24 hours) were classified as requiring further review. After the manual review of these 96 files, the count of overdetentions was reduced to 646.

This language comes from Analytic Focus' memorandum accompanying the Sentence Subclass Spreadsheet, which was provided to Plaintiffs' counsel in July (attached hereto as Exhibit A). Similar language can be found in other Analytic Focus' memoranda provided to Plaintiffs. (*See e.g.*, R. 184-9, Page ID#: 3172).

The xJail data was used to provide a data set for the Sentence Subclass because this electronic data was available and could be analyzed more quickly and efficiently than the many months taken to perform the initial review of Plaintiffs' six sample months, plus the two months pre and post Covid, which included email data and hard paper file review. Nonetheless, Analytic Focus has reviewed a sample of paper files to audit the algorithm and found some incorrect predictions. (*Id.*, Page ID#: 3172-73). To this point, of the 96 files identified as "overdetained" by the algorithm, only 38 can be said to be overdetained after serving their sentence. (*Id.*, Page ID#: 3173).

If the data contained in xJail is wrong, it is not surprising that the algorithm may make an incorrect determination. This appears to be the case for inmates like John Wilson (R. 194-4, Page ID#: 3579). Again, this is not an issue that Defendants nor Analytic Focus concealed:

> The results of the AF algorithm may be incorrect due to incorrect input into XJail. The AF algorithm relied on LMDC staff to accurately input a correctly calculated sentence into XJail. The issues above demonstrate there are at least some inaccuracies during the class period.

3

> These problems are the result of having incorrect data in XJail or no data where data should have been retained. The world's most perfect algorithm only works with correct data. Incorrect or missing data make it difficult to correctly identify those inmates who were overdetained. The current system identifies many who were not overdetained as being in the class and overdetained. It also misses inmates who were overdetained but for whom some information is missing from XJail.

(R. 184-9, Page ID#: 3175). Both parties are (and have been) well-aware of the limitations placed on Analytic Focus in light of the quality of the records. Importantly, Analytic Focus has not produced a final report in accordance with Fed. R. Civ. Pro. 26(2)(B). Rather, Analytic Focus is still reviewing data to make final conclusions, and paper records will be used in forming some of its expert opinions.

The second fact that Plaintiffs now apparently overlook are the parameters agreed upon which exclude some individuals from being considered "overdetained." These inmates include participants in the Home Incarceration Program ("HIP"), inmates released to other agencies ("Other Agency Releases"), and those incarcerated by the Commonwealth of Kentucky (serving "State Time"). HIP participants were not in jail when they were released, leading Plaintiffs to "decide[ ] that [they] will not be pursuing HIP claims in this litigation." (*See* Email from J. Ballinger dated April 27, 2023, attached hereto as Exhibit B). The second group of Other Agency Releases involved individuals who were not actually released from jail but transferred to another jurisdiction's supervision. The third group were inmates of the Commonwealth. Each of these exclusions from the class analysis have been made abundantly clear to Plaintiffs. (*See* R. 184-5, Page ID#: 3146, 3148).

4

Notwithstanding this understanding, nine of the inmates that Plaintiffs refer to in their Supplement fall into these categories. Plaintiffs point the finger at Defendants and Analytic Focus with claims of "incompetence" or "intentional concealment," but the reality is that Plaintiffs are not looking closely at the records or considering the agreed upon parameters set for Analytic Focus' review. Had Plaintiffs continued to cooperate in data collection and analysis, or simply asked Defendants before making their supplemental filing, this apparent confusion could have been avoided. Defendants regret the Court's time is being taken up with this red herring argument.

Below is a list of the inmates identified in Plaintiffs' supplement and a brief description of why these inmates were not included in the draft Sentence Subclass Spreadsheet:

1. <u>Joshua Yates</u> (R. 194-1, Page ID#: 3547-50): As indicated in the supplemental report created by LMDC and attached to the Plaintiffs' Supplement, Mr. Yates was serving state time and LMDC "does not calculate nor do we enter credit on state time into our system." (*Id.*, Page ID#: 3547). "Inmate Yates inquired about credit time served, which we do not input for state sentences." (*Id.*, Page ID#: 3550). Based upon a review of the records, Mr. Yates was serving a one-year sentence that should be served in the Kentucky Department of Corrections. Therefore, Mr. Yates was excluded from the class by the algorithm as an "Other Agency Release."

2. <u>Anthony Wayne Brown</u> (*Id.*, Page ID#: 3587-88): In xJail, Mr. Brown is listed as discharge planning. The LMDC supplemental report discusses LMDC's attempts to communicate with the State to determine if release was appropriate. Mr. Brown was serving State time, and therefore excluded from the subclass.

3. <u>William Jenkins</u> (*Id.*, Page ID#: 3551): Mr. Jenkins is listed as an "Other Agency Release" in xJail and as such is not part of the subclass.

4. <u>Jimmy Barefield</u> (*Id.*, Page ID#: 3580): Mr. Barefield is listed as HIP in xJail and also as a part of the LMDC incident report. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* <u>Ex. B</u>).

5. <u>Allen Hamilton</u> (*Id.*, Page ID#: 3581): Mr. Hamilton is listed as HIP in xJail and in the LMDC incident report. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* <u>Ex. B</u>).

6. <u>Ronald Glass</u> (*Id.*, Page ID#: 3582): Mr. Glass is listed as HIP in both xJail and the LMDC incident report. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* <u>Ex. B</u>).

7. <u>Sandro Guerra Avila</u> (Id., Page ID#: 3583): Mr. Avila is listed as HIP in xJail. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* <u>Ex. B</u>).

8.  Daniel Harris (*Id.*, Page ID#: 3584): Mr. Harris is listed as HIP in xJail and the LMDC incident report. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* Ex. B).

9.  Tadgh Joseph Reidy (*Id.*, Page ID# 3585): Mr. Reidy is listed as HIP in xJail. Plaintiffs elected not to pursue claims related to HIP releases in this litigation. (*See* Ex. B).

10. Dustin Bowen (*Id.*, Page ID#: 3586): Dustin Bowen's estimated sentence end date was June 11, 2018 in xJail. The LMDC incident report states that, "[o]n 04/03/18 at approximately 2300 hours, Andrew Hasselback brought me the folder of inmate Bowen, Dustin…I recalculated the sentence of 90 days to serve, starting date of arrest, and came up with an out date on 3/18/18. Based on this the inmate should have been released on 03/23/18 when the order granting credit time served was received." (*Id.*) This is an example of Analytic Focus relying on inaccurate date in xJail.

11. John Wilson (*Id.*, Page ID#: 3579): Mr. Wilson was released on February 14, 2017. The estimated end date in xJail is listed as February 14, 2017. In the notes, it is listed that, "Ashley added her credit time wrong she did not carry the one and this made the out date 2/14/17 instead of 2/4/17 which made Wilson a 10 day late release." (*Id.*) This additional information was not provided in xJail and Mr. Wilson's 2017 release was not a part of the paper files Analytic Focus has reviewed at this stage of the proceeding.

7

Conclusion

Contrary to Plaintiffs' repeated protestations to the contrary, Defendants have been nothing but cooperative during this process with the goal of creating an agreeable data set. Going above and beyond, in an effort to comply with the Court's strong desire to come to an agreed dataset, Defendants have even provided information from Analytic Focus (paid for by the Defendants) that is clearly work-product to achieve this goal. Again, Defendants respectfully ask the Court to deny Plaintiffs' rash and unsupported motion for sanctions.

If Plaintiffs are unhappy with the work performed by Analytic Focus, they remain free to employee their own expert, or to file a *Daubert* motion at the appropriate juncture. Alternatively, Defendants suggest that the Court reappoint the Special Master to assist the parties in working through Plaintiffs remaining concerns.

Respectfully Submitted,

*/s/ William H. Brammell, Jr.*
William H. Brammell, Jr.
Kayla M. Campbell
WICKER / BRAMMELL PLLC
323 West Main Street, 11th Fl.
Louisville, Kentucky 40202
(502) 780-6185
bill@wickerbrammell.com
kayla@wickerbrammell.com

and

Richard Elder
Assistant Jefferson County Attorney
200 South Fifth Street, Suite 300N
Louisville, KY 40202
(502) 574-3493
richard.elder@louisville.gov

and

John T. McLandrich
Mazanec Raskin & Ryder Co., LPA
100 Franklin's Row
34505 Solon Road, Suite 100
Cleveland, OH 44139
(440) 248-7906
jmclandrich@mrrlaw.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

  This is to certify that a true copy of the foregoing has been served on this 12th day of November, 2024, via the Court's ECF system, which will send electronic notice to counsel of record.

*/s/ William H. Brammell, Jr.*
William H. Brammell, Jr.
